**Kermit Ray GEARY and Doyle Randall Geary, Appellants,**

**v.**

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

March 3, 1972.

Rehearing Denied May 12, 1972.

About 2:30 a. m., Officer Schroeder noticed Kermit Ray Geary and Doyle Randall Geary, brothers, standing on the corner of 34th and Plantz Streets. Officer Schroeder recognized Doyle as one who was wanted on an arrest warrant. The officers arrested Doyle. He was seated in the back seat of the squad car directly behind the driver, Officer Price. Kermit entered the cruiser and sat directly behind Officer Schroeder.

As Schroeder was calling for assistance over the police radio, Kermit, with a revolver in his hand, ordered Schroeder to cancel the call. Kermit directed the officers to pass their revolvers to the back seat. Price was then ordered to drive the car to a secluded area. Immediately after the car stopped, Schroeder was shot five times in the back, but he managed to escape from the car. Schroeder lived and was a witness at the trial. Price also was shot five times. He was pronounced dead on arrival at a hospital. Schroeder managed to reach a telephone booth, where he called to report the happening. When the answering police cruiser approached the scene, the Gearys turned and ran. They were pursued by the officers of the answering cruiser. Doyle surrendered and was placed under arrest. He had in his possession two pistols, both fully loaded. One of the guns was a police service revolver. Kermit was apprehended and arrested shortly thereafter at the home of his brother, Hugh Geary. The other service revolver, wrapped in a towel, was found in a hallway in Hugh Geary's home shortly after Kermit was arrested.

Kermit was found guilty of willful murder. Doyle was found guilty of aiding and abetting the murder. Kermit received the maximum sentence of death. Doyle received a sentence of life imprisonment. They appeal. We affirm.

In support of their contention that we should reverse the convictions, the appellants allege the following: (1) The court erred in overruling appellants' motion for a change of venue; (2) the court erred in

Daniel T. Taylor, III, Louisville, for appellants.

John B. Breckinridge, Atty. Gen., Mark F. Armstrong, Asst. Atty. Gen., Frankfort, for appellee.

NEIKIRK, Judge.

Officers Joseph Price and Charles Schroeder of the Louisville Police Department were patrolling an area in western Louisville in their squad car during the early morning hours of November 29, 1967.

failing to sustain appellants' motion to exclude the introduction into evidence of the revolver found by the police in the home of Hugh Geary; (3) the voir dire examination violated appellants' constitutional rights; (4) the court erred in permitting the introduction into evidence of the photograph of the body of the slain officer; (5) the court erred in failing to grant appellants' motion for mistrial because of the improper cross-examination of appellant Doyle Geary by the Commonwealth; and (6) the court erred in failing to instruct on the whole law of the case.

■ The trial court did not err in overruling appellants' motion for a change of venue. It is to be noted that the Commonwealth did not receive reasonable notice in writing of the application for change of venue as required by KRS 452.220(2). In any event, the trial court heard argument in chambers by appellants' counsel in support of the motion. The extensive proceedings on this point were transcribed. We have examined the record and find that the trial court did not clearly abuse its discretion. Hurley v. Commonwealth, Ky., 451 S.W.2d 838.

■ The trial court did not err in failing to sustain appellants' motion to suppress and exclude the introduction into evidence of the revolver found by the police in the hallway of Hugh Geary's home. The record does not show, nor do the appellants assert, that Kermit had any property rights or possessory interests in the house belonging to Hugh. The evidence is that within five to ten minutes after Kermit was arrested in the kitchen of Hugh's home and taken away, another officer who had remained in the house asked Hugh for permission to conduct a search. The officer testified that Hugh not only made no objection but also gave him permission to conduct the search, which Hugh denied. In any event, whether the search was conducted with or without Hugh's consent, we fail to see where any of Kermit's constitutional rights were violated by this search. The officer found the damaging evidence:

the police revolver wrapped in a towel in a stack of soiled clothing in the hallway. It appears to us that the only person who could have complained of an illegal search and seizure would have been Hugh. We find no violation of any of Kermit's constitutional rights in the procurement of this evidence. Pruitt v. Commonwealth, Ky., 286 S.W.2d 551; Smith v. Commonwealth, Ky., 375 S.W.2d 242.

It is contended that the jury was selected in violation of the principles of Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). In Witherspoon, the Supreme Court said:

"* * * Specifically, we hold that a sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction. * * *"

The holding of the Witherspoon case was reaffirmed in Boulden v. Holman, 394 U.S. 478, 89 S.Ct. 1138, 22 L.Ed.2d 433 (1969), and Maxwell v. Bishop, 398 U.S. 262, 90 S.Ct. 1578, 26 L.Ed.2d 221 (1970). Quoting from Witherspoon, the Supreme Court in Maxwell said:

"'The most that can be demanded of a venireman in this regard is that he be willing to consider all of the penalties provided by state law, and that he not be irrevocably committed, before the trial has begun, to vote against the penalty of death regardless of the facts and circumstances that might emerge in the course of the proceedings. If the voir dire testimony in a given case indicates that veniremen were excluded on any broader basis than this, the death sentence cannot be carried out . . . .' Id., at 522 n. 21, 88 S.Ct. at 1777 n. 21."

In the instant case, each juror was asked if he had conscientious scruples against the imposition of the death penalty. Those who replied that they did have such scruples were further questioned as to whether or not they could apply the death

penalty in this or any other case. For example, one prospective juror was successfully challenged for cause on the basis of the following questions and answers:

"Q Mr. Shannon, do you have any conscientious scruples against the imposition of the death penalty?

A I am opposed to the death penalty.

Q By this do you mean that you could not find a death penalty in this case or any other case?

A That's right.

BY THE COURT: All right, you may step aside, Mr. Shannon."

Another prospective juror was removed from the jury panel on the basis of the following questions and answers:

"Q Mr. Scott, do you have any conscientious scruples against the imposition of the death penalty?

A I didn't hear you.

Q Do you have any conscientious scruples against the imposition of the death penalty?

A Yes sir, I'm against capital punishment.

Q By that I take it that you could not find a verdict in this or any other case of capital punishment?

A That's right.

BY THE COURT: All right, you may step aside."

Still another member of the panel was dismissed after the following questions and answers:

"Q Now, I want you to think this over very carefully, because, as I indicated to the other members of the panel, if you reach the point in this trial where you have to decide what punishment to mete out, we're going to run against this problem, and that is the question of the consideration of capital punishment. Do you, sir, have any conscientious scruples against the imposition of the death penalty?

A I do.

Q All right, sir, I take it, then by your answer that you could not find a death penalty in this or any other case, regardless of the facts?

A No, no case, not death.

MR. SCHROERING: All right.

BY THE COURT: Thank you, Mr. Knox, you may step aside * * *."

After similar colloquy to that set out above, the trial court consistently excused for cause only those prospective jurors who said they could not "in this case or any other case" vote to impose the death penalty. It is our opinion that the questions to the veniremen were properly intended to separate those jurors who indicated they would automatically vote against the imposition of capital punishment from those who expressed a general objection to imposing the death penalty. The answers of those jurors excluded clearly established that their attitude toward the death penalty would prevent them from observing the instructions of the court in this or any other case where the possible punishment was death.

In Jaggers v. Commonwealth, Ky., 439 S.W.2d 580 (1968), we affirmed the imposition of a death sentence. The Supreme Court reversed the judgment. Jaggers v. Kentucky, 403 U.S. 946, 91 S.Ct. 2282, 29 L.Ed.2d 856 (1971). In Jaggers, members of the panel were merely asked whether they had conscientious scruples that would prevent their imposing a death sentence "in this case." In the instant case, the questions as to the imposition of the death penalty were clearly understandable and did serve to separate those jurors irrevocably committed against the death penalty from those who were merely dissatisfied with it, as all the jurors so excluded stated that they could not impose a death

penalty "in this or any other case." We conclude that there was no violation of Witherspoon, as did the Arkansas Supreme Court in a recent case involving the same issue. Montgomery v. State, Ark., 473 S. W.2d 885 (1971).

The trial court did not abuse its discretion in not permitting the attorney for the defense to propound further questions to prospective jurors after they had disqualified themselves with respect to capital punishment. The record shows that a very liberal examination was permitted. Tarrence v. Commonwealth, Ky., 265 S.W. 2d 40 (1953).

We disagree with the contention that the trial court erred in admitting into evidence a colored photograph of the deceased officer. The photograph of the victim was important as it served to show the direction from which the bullets entered the body of the deceased. The direction from which the fatal shots were fired was an important fact to establish in order that the jury could ascertain whether both appellants, or only one of them, had fired the bullets into the body of Officer Price. While it is true, as appellants point out, that the coroner could have described the paths of the bullets after they entered the body of the victim, the photograph did serve a useful purpose as it indicated that the fatal shots came from the right rear of the squad car where appellant Kermit Geary was seated. This was a crucial determination since both appellants were armed and sitting in the back seat of the police cruiser when the firing began. It is obvious that establishing the direction from which the bullets came would give an indication as to whether appellant Doyle Geary or appellant Kermit Geary fired the fatal shots. We conclude that the photograph, although perhaps gruesome, was nonetheless competent and could not have had such a debilitating effect on the jury as to render it incapable of making a fair and unprejudiced decision. Napier v. Commonwealth, Ky., 426 S.W.2d 121 (1968).

On cross-examination the Commonwealth's attorney questioned appellant Doyle Geary as follows:

"Q And then what happened?

A He just—uh—commenced shooting and shot both of 'em.

Q Did he say anything?

A Didn't say a word.

Q Did he say, 'You can have one last prayer.' ?"

Appellants contend that this last statement by the Commonwealth's attorney was so inflammatory and so prejudicial to the right of a fair trial that a reversal is required. We do not agree. We feel that considering all the evidence presented at the trial this one question, admittedly uncalled for, did not constitute reversible error. Alexander v. Commonwealth, Ky., 463 S.W.2d 334 (1971). An objection by the appellants to the statement was sustained, and the trial court admonished the jury to disregard the questions and answers. Under these circumstances there was no error. Rollyson v. Commonwealth, Ky., 320 S.W.2d 800 (1959).

Appellants contend that "the court erred in failing to instruct on the whole law of the case, specifically, in that it did not give an instruction as to drunkenness except as to the robbery counts of the indictment, and it utterly failed to instruct on the defense of drug use as to any of the counts of the indictment." The trial court instructed the jury on willful murder, voluntary manslaughter, and on insanity. These instructions have been held as being correct in a number of cases that have in common the fact that the defendant became voluntarily intoxicated, committed homicide, and then claimed that the trial court erred in its refusal to specifically instruct on intoxication. Richardson v. Commonwealth, 284 Ky. 319, 144 S.W.2d 492 (1940); Terry v. Commonwealth, Ky., 371 S.W.2d 862 (1963); Hurley v. Commonwealth, Ky., 451 S.W.2d 838 (1970).

Intoxication may be shown in evidence and considered by the jury in a homicide case, and such evidence may operate to reduce the crime from murder to voluntary manslaughter. Hurley v. Commonwealth, supra. Evidence of being under the influence of drugs falls in the same category. The trial court did not err in failing to give a specific instruction on drug use.

It is apparent that the jury rejected appellant Kermit Geary's contention that he was so drunk or drugged that he did not know what he was doing when he shot and killed the deceased, and the evidence is more than sufficient to sustain the jury's verdict as to both appellants. The instructions given to the jury by the trial court were sufficient.

The judgment is affirmed.

All concur.