James C. STALLINGS, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

Supreme Court of Kentucky.

June 10, 1977.

Rehearing Denied Oct. 28, 1977.

Jack Emory Farley, Public Defender, Timothy T. Riddell, Asst. Public Defender, Frankfort, for appellant.

Robert F. Stephens, Atty. Gen., Deedra Benthall, Asst. Atty. Gen., Frankfort, for appellee.

JONES, Justice.

James C. Stallings appeals from a judgment sentencing him to life imprisonment pursuant to a jury verdict finding him guilty of murdering his wife.

Stallings raises three issues on this appeal: (1) that it was prejudicial error for a witness to mention that he had refused to take a lie detector test; (2) that it was prejudicial error for the trial court to permit colorful, gruesome photographs of the victim to be introduced into evidence; (3) that it was prejudicial error for the trial court to permit testimony that Stallings had accidentally shot and killed a previous wife.

The evidence of the Commonwealth established that at approximately 4 A.M. on August 12, 1975, Stallings' wife was mortally wounded by a bullet fired from close range by a RG .38 revolver. The Commonwealth also established that Officer Bob Morris of the Owensboro Police Department sold Stallings the revolver in October, 1969. The evidence for the Commonwealth established that the revolver was found in the trunk of Stallings' automobile some 13 hours after the shooting. Two witnesses for the Commonwealth testified they saw Stallings place something in the trunk of

his automobile shortly after the shooting. A witness for the Commonwealth testified that some two weeks before the shooting Stallings said that he was "going to have to kill all of those son-of-a-bitches someday."

Stallings testified in his own behalf. He stated that he was awakened around 4 A.M. and saw someone standing at the foot of his bed. He described this person as a large man. When he realized it was not his oldest son, he rolled off the bed to grab his service revolver. While he was rolling off the bed he heard a shot. Before he could get his revolver, he heard other shots fired by the unknown assailant. Stallings testified that he began shooting at the intruder. He followed him into the hall. He was unable to pursue the unknown person further because he discovered his house was on fire. Stallings testified that he awakened his 12-year-old daughter. He then returned to his room, picked his wife up off the bed and carried her out into the yard. According to Stallings, when he, his wife and daughter were safe from the fire, he attempted to crawl back into the house to see if he could save his three other children. The fire was out of control and the smoke was so dense he was unsuccessful in his attempt to save the children.

Stallings further contends that two or three weeks before the fire he had received a phone call from an anonymous person who informed him that, "They were going to burn him and his house." He steadfastly denied shooting his wife. Stallings denied also that he had purchased the revolver with which his wife was murdered. He admitted an incident in 1969 that led police officers to seize the revolver from him, but denied that he had seen it since 1969. Stallings' theory of the case is that an unknown assailant obtained possession of the revolver sometime between 1969 and the time that it was used to murder his wife. Stallings does not explain how the revolver ended up in the trunk of his car.

■ Officer Fred Hall of the Owensboro Police Department mentioned in his testimony that Stallings had refused to take a lie detector test. After an objection the trial court admonished the jury to disregard that testimony. Stallings asserts that the trial court's admonishment increased the prejudicial effect of the testimony because the trial court stated that the polygraph is used by law enforcement agencies as an investigative tool. Of course the introduction of this testimony was error. However, this court is of the opinion that the trial court properly admonished the jury so as to render the error harmless. Because this court finds it necessary to reverse and remand for a new trial on another issue, the court is confident that at another trial the Commonwealth will not permit any witness to testify that Stallings had refused to take a polygraph test. See *Meyer v. Commonwealth*, Ky., 472 S.W.2d 479, 486 (1971).

■ The court finds no merit in Stallings' contention that the trial court erred by allowing the photographs of the murder victim to be introduced into evidence. The photographs were not introduced for the purpose of prejudice. There was a question as to the entry of the bullets and as to the range from which they were fired. The powder burns visible in the photographs were some evidence upon which these questions could be determined. This court has said, "In this advanced technological age of television, movies and news media, those persons selected as jurors are able to view a picture of a victim of crime without prejudice to the defendant." *Napier v. Commonwealth*, Ky., 426 S.W.2d 121 (1968); *Deskins v. Commonwealth*, Ky., 512 S.W.2d 520 (1974).

■ The Commonwealth's Attorney succeeded in introducing evidence regarding the circumstances surrounding Stallings' involvement with the victim at the time when she was not his wife, and at the time when he was still married to his first wife. The evidence was that Stallings' first wife also died as a result of a shooting. Stallings, of course, explained the shooting of his first wife as an accident.

It is difficult for this court to comprehend why this evidence was introduced. It certainly was prejudicial to the substantial

**6**

rights of Stallings. The Commonwealth's Attorney said he was going to use this irrelevant evidence. In an awkward, confusing opening statement to the jury, he said:

> "Our evidence will further be that the defendant James C. Stallings began to go with Cathryn Stallings, his wife, who was found murdered with five (5) shots in her body a considerable length of time prior to the death of Mr. Stallings' first wife."

During cross-examination, over an objection, Stallings was asked about the shooting death of his first wife. He was asked about the relationship he had with his second wife (the victim) before his first wife was shot. Stallings was further asked whether it was not true that he had sexual intercourse with his second wife before the death of his first wife. Timely objections were made to all of these irrelevant questions. In his closing argument the Commonwealth's Attorney used this irrelevant evidence in an attempt to undermine the credibility of Stallings.

> "Now, you figure out who to believe. A man on trial for the death of his family while a man [Fred Hall] who was trying to save them by warning them about his misdeeds before the accidental shooting of his first wife—when he was going with this woman—to the total detriment of his entire family. You figure out how much credibility you want to give this defendant under those circumstances."

The evidence of Stallings' illicit love affair with his second wife, coupled with the evidence of the shooting death of his first wife, should not have been interwoven into the crime of murder for which Stallings was charged. Therefore this court is of the opinion that the trial court erred by permitting the Commonwealth to introduce and use the above irrelevant and highly prejudicial evidence. See *Brown v. Commonwealth*, Ky., 275 S.W.2d 928 (1955).

The judgment is reversed with directions that Stallings be granted a new trial.

All concur.