Michael Dean CLARK, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 87–SC–832–MR.

Supreme Court of Kentucky.

Dec. 19, 1991.

As Modified on Denial of Rehearing
Aug. 26, 1992.

Donna L. Boyce, Barbara M. Holthaus, Asst. Public Advocates, Dept. of Public Advocacy, Frankfort, for appellant.

Frederic Cowan, Atty. Gen., David Sexton, Gregory C. Fuchs, Asst. Atty. Gen., Frankfort, for appellee.

H. EDWARD O'DANIEL, Jr., Special Justice.

Appellant Michael Dean Clark was tried and convicted of murder, first degree rob-

bery, fraudulent use of a credit device in the second degree, receiving stolen property, and tampering with physical evidence. The jury sentenced him to death for the murder of Roger Eastham. Clark testified on his own behalf at the trial and admitted that he killed Eastham by shooting him in the head with a handgun on September 5, 1986.

Evidence at the trial showed that Clark wrapped the body, packed it in a chest freezer, and stored the freezer in a commercial storage unit five days after Eastham's death. He left Kentucky several days later with his wife and lived in Ohio and Michigan until April, 1987, when he was arrested in Michigan and charged with the murder. He used his brother's name and social security number while in Ohio and Michigan. Testimony established that Eastham carried large amounts of cash with him and had over thirty credit cards. Clark used Eastham's credit cards to make purchases totalling $5,829.04 after Eastham's death. Clark, who had been unemployed and had sought to borrow money from friends, spent large amounts of cash between the time of Eastham's death and Clark's arrest.

Police discovered Eastham's body in the freezer at the storage unit on April 8, 1987. Color slides of Eastham's head and face were made after the body was found. Additionally, a videotape was made during removal of Eastham's body from the freezer.

Clark raises 36 issues in his appeal, all of which we have reviewed. The conviction is reversed on numerous errors and remanded for a new trial. While this opinion will not address the merits of all alleged errors, those which necessitate reversal or which may recur in a second trial will be discussed.

I. GRUESOME COLOR SLIDES AND A VIDEOTAPE WERE NOT NECESSARY TO DEPICT THE VICTIM'S INJURIES BUT WERE INFLAMMATORY AND SERVED TO AROUSE PASSION.

■ Three color slides were introduced by the Commonwealth at the trial and projected on a screen while a witness testified approximately eight minutes. The first slide, depicting the victim's decomposing face, was shown to describe a bullet wound while the Commonwealth witness testified that no gun powder residue was present and that the wound caused internal damage to the victim's skull not visible on the slide. The second slide, portraying the victim's head with scalp and skull removed, was introduced to show where the bullets lodged. The third slide, showing the top of the head with scalp removed and a steel rod inserted through the head, illustrated the path of the bullet. An x-ray was also introduced to show the trajectory and where the bullet lodged.

■ The videotape made while Eastham's body was being removed from the freezer was shown to the jury while another Commonwealth witness testified. The video shows the victim's body wrapped in blankets with decompositional fluid oozing from the stiff mass of blankets. The body is shown being pulled out of the freezer, placed on a stretcher and wrapped in black plastic. More red fluid in the bottom of the freezer is shown as the camera pans slowly back and forth.

■ The Commonwealth contends the slides were relevant to illustrate the bullet wound, show where the bullets lodged and depict the path of the bullets. The general rule is that relevant pictures are not rendered inadmissible simply because they are gruesome and the crime is heinous. *Brown v. Commonwealth*, Ky., 558 S.W.2d 599 (1977). This general rule loses considerable force when the condition of the body has been materially altered by mutilation, autopsy, decomposition or other extraneous causes, not related to commission of the crime, so that the pictures tend to arouse passion and appall the viewer. The same proof illustrated by the slides was amply available through x-rays and the testimony of the pathologist who examined the body. Imprinting a lasting inflammatory image in the minds of the jurors far outweighs any

relevant value the slides may have. *Holland v. Commonwealth*, Ky., 703 S.W.2d 876 (1986).

The Commonwealth introduced the video to depict a part of the crime scene and as evidence of Clark's attempt to conceal the crime. The victim's body was not placed in the freezer until five days after the crime and it was not found until seven months later. Discovering and removing the body had no relevance to the crime scene, but served only to arouse passion and shock at the sight of a gory event. *Poe v. Commonwealth*, Ky., 301 S.W.2d 900 (1957).

## II. EVIDENCE OF PRIOR ACTS, UNRELATED TO THE CRIME, OF UNCHARGED CRIMINAL OR VIOLENT ACTIVITY WAS PREJUDICIAL.

■ Testimony of three acts was introduced at the trial characterizing Clark as a violent person. First, he bragged the night of Eastham's death about a street fight in which Clark was involved at a traffic light several days earlier. Second, vague threats that Clark may have made against the life of his former employer were elicited. Third, testimony was offered that Clark may have struck his wife the day of Eastham's death. No criminal charges for any of the three acts had been brought against Clark.

■ The general rule is that evidence of crimes committed "other than the one that is the subject of a charge is not admissible to prove that an accused is a person of criminal disposition." Lawson, The Kentucky Evidence Law Handbook, 2d ed., Sec. 2.20(A) (1984). Evidence of other criminal or wrongful acts may be introduced as an exception to the rule to show proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Federal Rules of Evidence, Rule 404(b). To be admissible under any of the exceptions, the other criminal or wrongful acts must be (1) relevant for some purpose other than to prove criminal predisposition, (2) sufficiently probative to warrant introduction, and (3) the probative value of the evidence outweighs its poten-

tial for prejudice to the accused. *Drumm v. Commonwealth*, Ky. 783 S.W.2d 380 (1990).

The Commonwealth argues that the three acts were inextricably intertwined with the series of events surrounding Eastham's death and Clark's hiding of the body in a freezer. The probative value of the collateral criminal or wrongful acts must be weighed against their inflammatory effect. The three acts in this case had little or no bearing on the charges for which Clark was being tried, yet they presented him as a violent person with a criminal disposition. Introduction of the acts was more prejudicial than probative. *Wonn v. Commonwealth*, Ky.App., 606 S.W.2d 169, 171 (1980).

## III. RESPONSIBILITY OF THE JURY FOR IMPOSING DEATH SENTENCE MAY NOT BE MINIMIZED BY STATEMENT IMPLYING THE JURY VERDICT OF DEATH IS MANDATORY OR CAN BE CHANGED.

■ The prosecutor pursued a course tending to create an impression with the jury that they do not bear the responsibility of imposing the death sentence. In opening statement, the prosecutor told the jury that his office infrequently seeks the death penalty and that very few murder cases qualify for capital punishment. In closing argument, he told the jury "this is an extraordinary case as envisioned by our Legislature" for the death penalty. He attributed to Justice Potter Stewart a comment that "the seeds of anarchy" are sown unless capital punishment is meted in deserving cases. He advised the jury to recommend the death sentence to the trial judge, using the term "recommend" 25 times in opening and closing during the sentencing phase to reinforce the notion that the final decision rests with the trial judge.

■ It is reversible error to minimize the jury's sense of responsibility for determining the appropriateness of the death sentence. *Ward v. Commonwealth*, Ky., 695 S.W.2d 404 (1985). Jurors are confronted with a truly awesome responsibility when

decreeing death for a fellow human. The decision to execute a person is made by the jury, not by the prosecutor's office, not by the Legislature, not by the trial judge, not by the Supreme Court. A juror led to believe others have ultimate responsibility for decreeing death may be willing to vote with the majority in the jury room, believing that higher legal authorities control the decision.

Reasons for voiding a death sentence when the vote of the jury has been minimized by suggestions that responsibility rests elsewhere are delineated in *Caldwell v. Mississippi*, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985):

a) The "delegation" of sentencing responsibility suggested by the prosecutor would not simply postpone petitioner's right to a fair determination of the appropriateness of death. It would deprive him of that right, for an appellate court, unlike the sentencing jury, is ill-suited to evaluate the appropriateness of death in the first instance. *Id.*, 105 S.Ct. at pp. 2640–2641.

b) Even when a sentencing jury is unconvinced that death is the appropriate punishment, it might nevertheless wish to "send a message" of extreme disapproval for the defendant's acts. This desire might make the jury receptive to the prosecutor's assurance that it can err because the error can be corrected on appeal. A defendant might then be executed, although no sentencer had ever determined that death was the appropriate sentence. *Id.*, p. 2641.

c) If a jury believes that a death sentence, and not a life sentence, may be delegated, it will also understand that any decision to "delegate" responsibility for sentencing can only be effectuated by returning a death sentence. This presents the specter of the imposition of death based on an irrelevant factor and would also create the danger of a defendant's being executed without any determination that death was the appropriate punishment. *Id.*, p. 2641.

d) The uncorrected suggestion that the jury's responsibility for any ultimate determination of death will rest with others presents the danger that the jury will choose to minimize the importance of its role, especially where the jury is told that the alternative decision-maker is the trial judge or the State's highest court. *Id.*, pp. 2641–2642.

This case was tried before the decision in *Tamme v. Commonwealth*, Ky., 759 S.W.2d 51 (1988), declaring that the word "recommend" was not to be used to describe the jury function in death sentencing in any subsequent case. The cumulative prejudicial impact of the prosecutor's actions in this case requires reversal. Whether before or after *Tamme*, the prosecutor may not present arguments which lead the jury to believe that the awesome responsibility for determining the appropriateness of death rests elsewhere.

Fundamental fairness requires the highest level of reliability in the jury's determination that death is the appropriate punishment. Comments by the prosecutor in this case leave broad doubt whether the death penalty was imposed because 1) the prosecutor determined to seek it, or 2) the Legislature decreed it, or 3) the jury thought it only a recommendation, or 4) the jury determined it to be the appropriate punishment.

## IV. VICTIM IMPACT TESTIMONY IS NOT ADMISSIBLE IN THE GUILT PHASE OF TRIAL.

Evidence praising the character of the victim was presented to the jury. The impact of Eastham's disappearance on his family was exploited. Eastham's brother testified that his mother was due to have eye surgery soon after her son's disappearance. He told the jury that the victim made phone calls and visits weekly with his parents who are both in their 80's. Another witness testified that Eastham had many friends who became alarmed about his disappearance.

The prosecutor's closing argument in the guilt phase of the trial was charged with emotional statements engendering sympathy for the victim and his family. He told the jury that its verdict would have a severe impact on the victim's family and friends. He asked the jury to imagine the family at the scene of the crime, begging

"please don't pull that trigger" and offering money to spare Eastham's life.

This Court has disapproved sensationalizing tactics which tend to pressure the jury to a verdict on considerations apart from evidence of the defendant's culpability. *Dean v. Commonwealth*, Ky., 777 S.W.2d 900 (1989).

A certain amount of background evidence regarding motive may be relevant to understanding the nature of the crime. The trial court must balance the probative value of the evidence against its inflammatory nature and limit or exclude such evidence where the inflammatory effect clearly outweighs the probative value. *Sanborn v. Commonwealth*, Ky., 754 S.W.2d 534 (1988). Any evidentiary value, in terms of tending to prove a fact in issue that the details about Eastham's personal life may have established, was far outweighed by the inflammatory prejudice created in the minds of the jurors against Clark.

The Commonwealth's Attorney has reasonable latitude "to persuade the jurors the matter should not be dealt with lightly." *Lynem v. Commonwealth*, Ky., 565 S.W.2d 141, 145 (1978). The Commonwealth's Attorney also has the responsibility to conduct his prosecution according to the principle that one accused of a crime is entitled to a fair and impartial trial. The prosecutor's emotional and inflammatory appeal to the jury on behalf of Eastham's family undermined the accused's right to a fair trial. *Dean v. Commonwealth*, Ky., 777 S.W.2d 900, 905 (1989).

## CONCLUSION

The trial record contains other alleged errors having the cumulative effect of tainting a fair trial. However, the remaining issues raised by Clark are not discussed in this opinion because they should not recur. The convictions on all counts are reversed and the case is remanded to Fayette Circuit Court for a new trial.

STEPHENS, C.J., not sitting.

COMBS, LAMBERT and LEIBSON, JJ., concur.

WINTERSHEIMER, J., dissents with a separate opinion in which REYNOLDS and SPAIN, JJ., join.

WINTERSHEIMER, Justice, dissenting.

I must respectfully dissent from the majority opinion which reverses this conviction because I believe Clark was not unduly prejudiced when the prosecution introduced relevant photographic evidence which provided assistance to the jury; there was no improper introduction of prior bad acts. The victim impact statement did not invalidate the sentence fixed by the jury, and neither the instructions, nor the prosecutor's argument impermissibly lessened the responsibility of the jurors in fixing a sentence.

First, Clark was not unduly prejudiced when the prosecution introduced photographic evidence which assisted the jury. There was no reversible error in displaying the three slides during the testimony of the forensic pathologist. It is well settled that a photograph which is otherwise relevant is not inadmissible because it may appear gruesome to some. *Wager v. Commonwealth*, Ky., 751 S.W.2d 28 (1988); *Milburn v. Commonwealth*, Ky., 788 S.W.2d 253 (1990). The testimony of the witness regarding the first slide was to show the bullet wound; the second slide depicted where the bullets lodged and the third slide showed the path of the bullet. Photographic evidence tending to show the direction from which the bullets entered the body of the deceased have been approved. *Geary v. Commonwealth*, Ky., 503 S.W.2d 505 (1972).

The first slide shows a single entrance wound, but two bullets were found to have been shot into the head of the deceased. One remained inside and the other passed through the soft tissue outside the skull. The single entrance wound, together with the presence of soot deposits, was explained to have been consistent with a contact wound with the gun pressed against the head of the victim. The second and third slides are relevant when considered

together with the first slide. The slides show no more of the body of the victim than necessary. The witness did not use them excessively, and there was no reversible error in their admission.

In any event, it is difficult to imagine that a contemporary jury would not know that a corpse left to rot for eight months would not have achieved an advanced state of decomposition and acquired a foul odor. *Stallings v. Commonwealth*, Ky., 556 S.W.2d 4, 5 (1977) noted that:

> In this advanced technological age of television, movies, and news media, those persons selected as jurors are able to view a picture of a victim of a crime without prejudice to the defendant. *Napier v. Commonwealth*, Ky., 426 S.W.2d 121 (1968); *Daskins v. Commonwealth*, Ky., 512 S.W.2d 520 (1974).

There was no unnecessary inflammation of the jury which would amount to reversible error.

There was no improper introduction of prior bad acts. It should be noted that the Attorney General argues that this assignment of error is totally unpreserved and Clark admits that it is unpreserved for the most part. The majority opinion recognizes the argument that the three acts were inextricably intertwined with the events surrounding the murder but concludes that the introduction of the acts was more prejudicial than probative. It is the responsibility of the trial judge to decide whether the probative value of the evidence outweighs its inflammatory nature. If the trial judge determines that it does, the evidence is admissible. The decision to admit or exclude evidence of this nature is left in the sound discretion of the trial judge. *Rake v. Commonwealth*, Ky., 450 S.W.2d 527 (1970).

Here the trial judge did not abuse his discretion in not striking the testimony. The fact that the testimony had references to "thumping" a man does not render it inadmissible. This Court has previously permitted evidence that a defendant stomped a kitten after a murder and before disposing of the bodies. *Halvorsen and Willoughby v. Commonwealth*, Ky., 730 S.W.2d 921 (1986).

The penalty phase instructions and the arguments of the prosecutor did not lessen the responsibility of the jurors in fixing the sentence in this case. Obviously, *Tamme v. Commonwealth*, Ky., 759 S.W.2d 51 (1988), declared that the word "recommend," even though used in the statute, was not to be used in any case tried after the date when that opinion became final. This case was tried in September and October of 1987. Consequently, *Matthews v. Commonwealth*, Ky., 709 S.W.2d 414 (1985) and *Halvorsen, supra*, were the law of the Commonwealth at that time. This Court in *Matthews, supra*, said in pertinent part that because the statute uses the word "recommend," the trial judge does no more than follow the language of the statute when he uses the same word in the instructions to the jury. The *Matthews* court recognized the decision of the United States Supreme Court in *Caldwell v. Mississippi*, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985). Again, we must note that Clark did not preserve this assignment of error in the 1987 trial.

Here, neither the instructions, nor the arguments of the prosecutor minimized the sentencing responsibility of the jurors in this case. A review of the penalty phase indicates the absence of the words "only" or "merely" in connection with the recommendation to the trial court. The first thing the jury was told in the first instruction of the penalty phase was that it was their duty to fix the punishment for the defendant. The penalty phase instructions relating to the sentence by the jury used the word "fix" as distinguished from the word "recommend."

In addition there was nothing in the argument of the prosecutor which would indicate an attempt to minimize the responsibility of the jury in the penalty phase. In the closing argument of the penalty phase, the prosecutor once told the jury that they were to fix the penalty that they believed the defendant deserved. The occasional use of the word "recommend" during the rhetoric of the opening or closing statement should hardly be the basis of reversible error.

The victim impact statement was appropriately admitted by the trial judge and did

not invalidate the sentence fixed by the jury.

This Court has repeatedly recognized the validity of some information relating to the victim, and it has been stated that there is no error in bringing to the attention of the jury the fact that the victim was a living person and that a certain amount of background evidence regarding the victim is relevant to understanding the nature of the crime. *McQueen v. Commonwealth*, Ky., 669 S.W.2d 519 (1984); *Sanborn v. Commonwealth*, Ky., 754 S.W.2d 534 (1988); *See also Campbell v. Commonwealth*, Ky., 788 S.W.2d 260 (1990); *Templeman v. Commonwealth*, Ky., 785 S.W.2d 259 (1990).

The error in *Morris v. Commonwealth*, Ky., 766 S.W.2d 58 (1989) or *Sanborn, supra*, was the encouraging of the jury to impose the death penalty because of the victim's status in the community. Closing argument is not improper merely because the prosecutor may become emotional and refer to the victim's family. A criminal conviction should not be lightly overturned on the basis of the prosecutor's statements standing alone. *Cf. Smith v. Commonwealth*, Ky., 734 S.W.2d 437 (1987).

Clark received a fair trial and an objective sentencing. The victim impact statement did not vitiate this underlying fact. *Cf. Turpin v. Commonwealth*, Ky., 780 S.W.2d 619 (1989). The situation in this case does not approach the extreme situation noted in *Booth v. Maryland*, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987). Actually, the complained of testimony was admissible because it related directly to the circumstances of the crime. As such, the authority of *South Carolina v. Gathers*, 490 U.S. 805, 109 S.Ct. 2207, 104 L.Ed.2d 876 (1989), is persuasive.

I would affirm the conviction in all respects.

REYNOLDS and SPAIN, JJ., join in this dissent.