# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: APRIL 18, 2019
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2018-SC-000017-MR

WILLARD CALHOUN      APPELLANT

         ON APPEAL FROM GREEN CIRCUIT COURT
V.          HONORABLE ALLAN RAY BERTRAM, JUDGE
                   NO. 16-CR-00017

COMMONWEALTH OF KENTUCKY      APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING</u>**

A Green County jury convicted Appellant, Willard Calhoun, of one count first-degree manslaughter and being a first-degree persistent felony offender (PFO). The jury recommended a sentence of ten years' imprisonment enhanced to twenty-five years. The trial court accepted the jury's recommendation and sentenced him accordingly. Calhoun now appeals, arguing five points of error: (1) the trial court prevented him from presenting his defense by excluding evidence of the victim's violent nature; (2) the court erred by allowing a photograph of the victim and his family into evidence; (3) the court erred in

allowing duplicative autopsy photographs; (4) the court violated RCr[1] 9.74 by allowing a diagram of Calhoun's home into the jury room; and (5) cumulative error. After careful review, we affirm the judgment and sentence.

## I. BACKGROUND

Around midnight on June 15, 2016, Calhoun stabbed and killed Gerald Scott with a pocket knife while the two were fighting at Calhoun's home in Green County, Kentucky. Calhoun's girlfriend, Christina Pica, and Gerald's wife, Shaun Scott, were present that evening. Both women testified at trial that an altercation occurred between Calhoun and Gerald. Christina testified that Gerald barged into the house, confronted Calhoun, said he was there to fight Calhoun, punched Calhoun in the face, and then placed him in a chokehold. Shaun testified that she was in the bathroom while the two men were fighting and that when she returned, Gerald was dead on the kitchen floor. Another individual, Trevor Tucker, was also present during the altercation. He testified that Calhoun stabbed Gerald after Gerald threw a pot at him and then placed him in a tight headlock.

Calhoun did not testify. However, portions of a recording of his police interrogation were played for the jury wherein he claimed self-defense. During his interrogation, Calhoun said that, when they were kids, Gerald asked Calhoun to have sex with him. According to Calhoun,

---

[1] Kentucky Rules of Criminal Procedure

he believed that this old accusation is what led to the physical altercation resulting in Gerald's death.

More specifically, Calhoun told Christina about Gerald's alleged sexual proposition. Christina then told Gerald's wife, Shaun, who then told Gerald. Shaun testified that after she mentioned this to Gerald, they drove to Calhoun's home to confront him. She informed the investigating officers that Gerald was going over there to "whoop his ass." Christina echoed this concern. Shaun further testified that she and Gerald had been consuming alcohol that evening. Methamphetamine and other drugs were subsequently discovered in Gerald's system.

## II. ANALYSIS

### A. EVIDENTIARY ISSUES

Although Calhoun raises five primary issues on appeal, four of these issues concern various alleged evidentiary errors and, therefore, will be addressed together. A trial court's decision whether to admit evidence is reviewed for an abuse of discretion. *Matthews v. Commonwealth*, 163 S.W.3d 11, 19 (Ky. 2005). Abuse of discretion occurs if "the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

*Police Interrogation Recording*

Prior to trial, the Commonwealth filed a motion in limine to exclude portions of an audio recording of Calhoun's police interrogation wherein he discussed Gerald's violent nature and, specifically, his violence against Shaun.

3

The court granted the Commonwealth's motion over Calhoun's objection, and the interrogation recording was redacted prior to being played for the jury. The defense also raised this issue in support of its motion for a new trial and for a judgment notwithstanding the verdict. Therefore, this issue is properly preserved.

Calhoun cites *Saylor v. Commonwealth* in support of his argument that these statements were admissible in support of his self-defense claim. 144 S.W.3d 812 (Ky. 2004). *Saylor* held that "[g]enerally, a homicide defendant may introduce evidence of the victim's character for violence in support of a claim that he acted in self-defense or that the victim was the initial aggressor." *Id.* at 815 (citations omitted). In addition to general reputation or opinion evidence, evidence of specific violent acts by the victim may be admitted only if "the defendant *so feared the victim* that he believed it was necessary to use physical force . . . 'provided that the defendant knew of such acts, threats, or statements at the time of the encounter.'" *Id.* at 815-16 (emphasis added) (citing Robert G. Lawson, *The Kentucky Evidence Law Handbook* § 2.15[4][d], at 105-106 (4th ed. 2003) (Lawson, *Kentucky Evidence Law*)).[2] *See also*

---

[2] "Though widely recognized as maybe the most probative of all character evidence, [specific acts] are the most troublesome of the three methods and the one that is subjected to the greatest controls." Lawson, *Kentucky Evidence Law* § 2.25[1], at 116-17 (5th ed. 2013).

4

KRE[3] 405 ("Methods of Proving Character").[4] This principle has been

consistently applied in our case law. *Ordway v. Commonwealth*, 391

S.W.3d 762, 779 at n. 9 (Ky. 2013). Unlike the present case, we

concluded in *Ordway* that the victim's statement while holding a gun to

Appellant's head: "Give it up, you know what time it is, or you're going to

die[,]" was clearly admissible under this principle. *Id.* The Court

reasoned that the victim's statement was "plainly a threat that would

have reasonably put Appellant in fear for his life." *Id.* We cannot say the same

about the present facts.

Ten redacted statements are at issue here, most of which referred to

Gerald's violent nature and history of beating his wife. Having reviewed all ten,

the following are several examples of the statements that were excluded from

evidence in the present case:

> I told [Christina] they [the Scotts] was crazy, they all the time into
> it, he's all the time beating the shit out of her and they all the time
> crazy, the law ends up there, and I told the old lady to stay away
> from them.

---

[3] Kentucky Rules of Evidence

[4](a) Reputation or opinion. In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to general reputation in the community or by testimony in the form of opinion.

(b) Inquiry on cross-examination. On cross-examination of a character witness, it is proper to inquire if the witness has heard of or knows about relevant specific instances of conduct. However, no specific instance of conduct may be the subject of inquiry under this provision unless the cross-examiner has a factual basis for the subject matter of the inquiry.

(c) Specific instances of conduct. In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of that person's conduct.

5

...

Yea, and I told [Christina], I told her to stay away from them cause they was crazy he was all the time beatin on her and they was all the time into it and stuff I mean it was crazy. Pretty violent.
...

I don't know if he was beating her, seemed like he was beating her before I opened the door, I was like good lord what's going on.[5]

With one notable exception, these statements—as well as others that were excluded—strain the boundaries of "general opinion" evidence. *See* Lawson, *Kentucky Evidence Law* § 2.25[1] at 116 (providing examples of opinion evidence under KRE 405: "the defendant is an honest person," "the victim was prone to violence."). However, these statements are not aptly categorized as specific acts evidence either. One excluded statement is more clearly opinion evidence. Calhoun's statement that "I know they drink and get crazy, they get crazy, they violent" should have been admitted under *Saylor*.

Nevertheless, it is noteworthy that while many of the omitted statements demonstrate that Calhoun claimed to have knowledge of Gerald's violence towards Shaun, nothing in these statements suggests that *he* was personally threatened by Gerald. *Cf. Ordway*, 391 S.W.3d at 779. It is also noteworthy that, unlike the present case, the defendant in *Ordway* testified concerning the victim's threat to harm him. As such, Ordway exposed himself to cross-examination on that issue. In contrast,

---

[5] This statement refers to the events that took place on the night of the crime. The door being referenced was the back door of the Calhoun residence.

6

Calhoun sought to introduce his own statements concerning Gerald's violent behavior while denying the Commonwealth the opportunity to cross-examine him.

However, we have no explanation of the trial court's exercise of its discretion to exclude this evidence. The parties have failed to cite any written or oral findings resolving the matter and we have discovered none. As such, we cannot determine with assurance that the court's discretion was not abused. Therefore, we will review this issue for harmless error. RCr 9.24. We described this standard in detail in *Dunlap v. Commonwealth*:

> Preserved errors are reviewed under normal standards. As noted in *Brown v. Commonwealth*, "preserved evidentiary and other non-constitutional errors will be deemed harmless under RCr 9.24 and *Kotteakos v. United States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), if we can say with fair assurance that the judgment was not substantially swayed by the error." 313 S.W.3d 577, 595 (Ky.2010). "Our inquiry is not simply 'whether there [is] enough [evidence] to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand.'" *Id.* (*quoting Kotteakos*, 328 U.S. at 765, 66 S.Ct. 1239).

435 S.W.3d 537, 553 (Ky. 2013).

The present case was defended under a self-protection theory wherein the jury heard extensive testimony from four eyewitnesses to the events that resulted in Gerald's death. Except for Gerald's wife, Shaun, much of that testimony was favorable to the defense. For example, the jury heard testimony from Christina that Gerald barged into the house, confronted Calhoun, said he was there to fight Calhoun, punched Calhoun in the face and then placed him in a chokehold. Trevor Tucker similarly testified that Calhoun stabbed Gerald

7

after Gerald threw a pot at him and then placed him in a tight headlock. And, of course, the jury was played a redacted recording of Calhoun's own statement to the police wherein he detailed the events surrounding the altercation and stabbing. Multiple witnesses also testified concerning the underlying event that allegedly sparked Gerald's rage—Calhoun's accusation that Gerald once petitioned him for sex when they were children.

Therefore, the jury was presented with a vivid description of the events surrounding Gerald's death, much of which portrays Gerald as the initial aggressor. After all, it was Gerald who barged into Calhoun's home. Calhoun's version of events was reflected in the "no duty to retreat" jury instruction, as well as "perfect and qualified" self-protection instructions. The self-protection instruction included the following language:

> If you believe from the evidence that Gerald Scott had unlawfully and forcibly entered Willard Calhoun's dwelling, and that Willard Calhoun knew that Gerald Scott had unlawfully and forcibly entered Willard Calhoun's dwelling, then you shall presume that Willard Calhoun had a reasonable fear of imminent peril of death or great bodily harm under this instruction.

By convicting Calhoun of first-degree manslaughter, the jury rejected these defenses. In doing so, however, the jury also rejected the Commonwealth's theory of murder. Considering the testimonial evidence presented in this case detailing the events surrounding the killing, we can say "with fair assurance that the judgment was not substantially swayed" by any error that may have

occurred here. *Driver v. Commonwealth,* 361 S.W.3d 877, 886 (Ky. 2012) (citation omitted).

Calhoun raises additional evidentiary issues as well. He claims that the trial court erred in failing to admit the following: 1) a phone call recording between Christina and her mother; 2) a portion of Christina's testimony about why she would not have opened the back door for Gerald and Shaun on the night of the killing; and 3) a portion of Shaun's testimony stating that Gerald physically abused her on the night of his death. That portion of Shaun's testimony was taken by avowal along with testimony from a nurse who treated Shaun. For the following reasons, the exclusion of these items of evidence does not constitute an abuse of the trial court's discretion.

### Phone Call Recording

The transcript of a phone call between Christina and her mother was used to impeach Christina's testimony. During cross-examination, Christina was specifically asked by defense counsel to read from the phone call transcript. The trial court denied defense counsel's subsequent request to play the audio recording on the basis that it was duplicative. "[T]rial courts retain broad discretion to regulate cross-examination." *Yates v. Commonwealth,* 430 S.W.3d 883, 901 (Ky. 2014). Therefore, "so long as a reasonably complete picture of the witness's veracity, bias and motivation is developed, the judge enjoys power and discretion to set appropriate boundaries." *Davenport v. Commonwealth,* 177 S.W.3d 763, 768 (Ky. 2005) (quoting *Commonwealth v. Maddox,* 955 S.W.2d 718 (Ky.1997)). As such, the trial court did not abuse its

discretion by refusing to admit audio evidence where a written transcript of that evidence was sufficient. *See Goncalves v. Commonwealth*, 404 S.W.3d 180, 203-04 (Ky. 2013).

### *Christina's Testimony*

The disputed portion of Christina's testimony occurred during her cross-examination by defense counsel. Christina was discussing why she let Shaun and Gerald inside the Calhoun residence the night of the crime. She stated that she would not have let Shaun in the back door had she known that Shaun was with Gerald. According to Christina, Shaun knocked on the door and said that she was there with her brother when, in fact, she was accompanied by Gerald. Christina proceeded to discuss a conversation between herself and Shaun that occurred on a previous occasion. The Commonwealth objected on hearsay grounds.

During the nine-minute bench conference that ensued, several theories were raised in support of the objection. Defense counsel generally claimed that Christina would testify that Shaun told her that the two men would fight if they met. Counsel also mentioned that threats were involved. However, there was no disclosure of what exactly Christina would have testified to had she been permitted to continue. Defense counsel additionally argued that the contested statement was not hearsay because it did not concern the truth of the matter asserted, and that, even if it was hearsay, it qualified under the then existing mental or emotional condition of the declarant exception. KRE 803(3).

10

It is unclear from the record why the court ultimately sustained the Commonwealth's objection. Therefore, we cannot determine whether the contested testimony was hearsay or whether an exception to that rule applies. However, we note that Christina was permitted to testify as to her own perception of hostility between Gerald and Calhoun and why she would not have opened the door had she known Gerald was there. This uncontested testimony occurred immediately prior to the contested testimony. She specifically testified as follows:

> Counsel: And Shaun told you that it was her and her brother?
>
> Christina: Yes ma'am.
>
> Counsel: And that's why you opened the door?
>
> Christina: Yes.
>
> Counsel: If she would have said it was Gerald at the door
>
> ...
>
> Counsel: Would you have opened that door?
>
> Christina: No.
>
> Counsel: Why not?
>
> Christina: Because I knew that there would have been an altercation between those two.

Therefore, although Christina did not testify as to why she specifically thought there would be an altercation, she was permitted to testify that she had reason to believe that there would have been. We also note that this testimony benefited the defense. Any additional testimony concerning what Christina heard from Shaun in this regard would have been cumulative.

11

Therefore, even when taking the evidence in the light most favorable to the Calhoun, there was no reversable error here.

### Avowal Testimony

By avowal, defense counsel introduced Shaun's statement that, prior to going to the Calhoun residence, Gerald "kinda of went crazy" and "snapped." Dixie Vanarsdale, a nurse who treated Shaun, also testified by avowal about Shaun's injures. Shaun informed Ms. Vanarsdale that Gerald physically abused her on the night of the crime. This is evidence of a specific violent act—that Gerald "snapped" and physically abused Shaun earlier that day prior to coming to Calhoun's home. Calhoun's argument here is extremely brief and provides no clear indication that Calhoun was aware of these abusive events. As such, this evidence is inadmissible under *Saylor.* 144 S.W.3d at 815-16.

### Pictorial Evidence

Calhoun also argues that the trial court erred by admitting into evidence a family photo wherein Gerald is seated and surrounded by his wife and children. The photo was admitted as an exhibit for the Commonwealth in response to defense counsel's questioning of Shaun about Gerald's physique. Gerald was larger in stature than Calhoun. Therefore, this issue was relevant in light of Calhoun's self-defense claim.

And although Calhoun concedes that the photo was relevant to the issue of Gerald's size, he nevertheless argues that the admission of this photo opened the door to additional evidence concerning Gerald's family

life, including the previously discussed evidence that Gerald allegedly beat his wife. The trial court disagreed and stated that it failed to see how introducing this photo into evidence allowed the defense to springboard into Gerald's relationship with Shaun. When defense counsel suggested that an autopsy photo be used instead, the trial court overruled the objection and the trial continued. Like the trial court, we also fail to see how admitting this relevant photo of Gerald requires the admission of the other attenuated evidence of which Calhoun complains. There was no error here.

Calhoun further contends that the trial court erred by introducing thirteen autopsy photographs of Gerald. The photos were used during the testimony of Dr. Donna Stewart, who performed the autopsy. The size of these photos was enhanced to fit on large poster boards and displayed to the jury on an easel. Smaller versions of these photos were also available to the jury. "The general rule is that a photograph, otherwise admissible, does not become inadmissible simply because it is gruesome and the crime is heinous." *Funk v. Commonwealth*, 842 S.W.2d 476, 479 (Ky. 1992). However, "[t]his general rule [of admission] loses considerable force when the condition of the body has been materially altered by mutilation, autopsy, decomposition or other extraneous causes, not related to the commission of the crime . . . ." *Hall v. Commonwealth*, 468 S.W.3d 814, 823 (Ky. 2015) (quoting *Clark v. Commonwealth*, 833 S.W.2d 793, 794 (Ky. 1991)).

The specific photos at issue here showed Gerald's forty-four stab wounds located on multiple parts of his body. As such, it seems appropriate that

13

multiple pictures would be necessary to capture the scope of the victim's injuries. And to the extent that the body was "materially altered" it was due to the stab wounds. *Hall*, 468 S.W.3d at 823. Calhoun's primary claim is that it was error to admit the large and small versions of the photos, and that the trial court failed to conduct a proper analysis under KRE 403 of each photo's incremental probative value. In so arguing, Calhoun fails to argue *how* these photos were irrelevant, gratuitous, or otherwise unduly prejudicial under KRE 403. In fact, this Court has previously approved of the admission of similar autopsy photos in other cases. *See, e.g.,* *Davis v. Commonwealth*, 967 S.W.2d 574, 579 (Ky. 1998). Therefore, the trial court did not abuse its discretion here.

Lastly, Calhoun asserts that structural error occurred when the jury was erroneously provided with an exhibit that visually depicted the layout of Calhoun's home. This visual aid was contained on the back of one of the properly admitted exhibits. The Commonwealth concedes that the home diagram was not admitted into evidence and should not have been provided to the jury during deliberations. RCr 9.72. However, Calhoun has failed to demonstrate any prejudice that he suffered because of this error. Nor does he elaborate on the "structural" nature of this error and why reversal of his conviction is required. Having reviewed and discussed the evidence in this case, we can determine "with fair assurance that the judgment was not substantially swayed by the error."

14

*Driver*, 361 S.W.3d at 886 (citation omitted). Therefore, the error is harmless. RCr 9.24.

## B. THERE IS NO CUMULATIVE ERROR

Calhoun argues that his conviction should be reversed for cumulative error. Under this limited doctrine, we will reverse only when the "individual errors were themselves substantial, bordering, at least, on the prejudicial." *Brown v. Commonwealth*, 313 S.W.3d 577, 631 (Ky. 2010). In the present case, there is "insufficient harmless error to create a cumulative effect which would mandate reversal for a new trial." *Tamme v. Commonwealth*, 973 S.W.2d 13, 40 (Ky. 1998).

## III. CONCLUSION

For the foregoing reasons, the judgment and sentence of the Green Circuit Court is affirmed.

Minton, C.J.; Hughes, Keller, Lambert, VanMeter and Wright, JJ., concur. Buckingham, J., not sitting.

COUNSEL FOR APPELLANT:

Robert Chung-Hua Yang
Assistant Public Advocate


COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

Jason Bradley Moore
Assistant Attorney General