Gregory SAYLOR, Appellant,

v.

COMMONWEALTH OF KENTUCKY,
Appellee.

No. 2002–SC–0456–DG.

Supreme Court of Kentucky.

Sept. 23, 2004.

David E. Davidson, William C. Oldfield, Cobb & Oldfield, Covington, Counsel for Appellant.

Gregory D. Stumbo, Attorney General, Matthew D. Nelson, Assistant Attorney General, Criminal Appellate Division, Frankfort, Counsel for Appellee.

Opinion of the Court by Justice COOPER.

Roy Thomas Faulconer was found stabbed to death at his residence in Covington, Kentucky, on the afternoon of August 26, 1999. In addition to a fatal stab wound through the heart, Faulconer's throat had been cut and there were defensive stab wounds to his arms. Appellant, Gregory Saylor, admitted killing Faulconer but claimed he did so in self-defense. Following a trial by jury in the Kenton Circuit Court, Appellant was convicted of manslaughter in the first degree ("manslaughter 1st") and sentenced to eighteen years in prison. The Court of Appeals affirmed. On discretionary review, Appellant asserts the following claims of error: (1) the trial court failed to require the Commonwealth to provide discovery of the Covington Police Department's entire records pertaining to Faulconer so that he could use them to prove Faulconer's violent disposition; (2) the prosecutor exercised a peremptory strike in violation of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); (3) the trial court failed to direct a verdict of acquittal because of the Commonwealth's failure to properly prove its case; (4) the trial court failed to direct a verdict of acquittal on the Commonwealth's theory of wanton murder; and (5) the trial court failed to give separate "stand alone" instructions on lesser included offense of manslaughter in the second degree ("manslaughter 2nd") and reckless homicide. Finding no error, we affirm.

\*　　\*　　\*　　\*　　\*　　\*

Appellant was forty-three years old when Faulconer was killed; Faulconer was several years older. The two had been friends since childhood and lived only three blocks apart. Appellant arrived at Faulconer's residence for a visit at approximately 2:00 a.m. on August 26, 1999. As usual, Appellant was wearing his buck knife in a sheath on his belt. Another acquaintance, Ronnie Gregory, whom Appellant described several times as an "enforcer" for a motorcycle gang known as the "Iron Horsemen," was also present. According to Appellant, Gregory approached him and, without warning, hit him in the side of the head with a pipe wrench and demanded that he apologize for having referred to Faulconer as a "snitch." (Gregory testified that he only struck Appellant with his fist.) Faulconer then picked up his .357 magnum Smith &

Wesson handgun and pointed it at Appellant. Gregory took the gun from Faulconer and threatened to shoot Appellant. No further violence ensued and Gregory departed the residence at about 3:00 a.m.

Appellant testified that immediately after Gregory's departure, Faulconer charged at him, again brandishing the handgun. Appellant was able to knock the gun away. As Faulconer retrieved the gun, Appellant drew his knife. As the two wrestled on the sofa, Appellant cut Faulconer's throat and stabbed him in the arms. Finally, he placed the knife against Faulconer's chest, put his weight on it, and "pushed it in." Appellant claimed he then retrieved both the knife and the handgun, cut the telephone wire, and left the residence before 6:00 a.m. In contradiction of Appellant's version of events, Ronnie Gregory's sister, Phyllis Hall, testified that when she arrived at Faulconer's residence at approximately 8:00 a.m., Faulconer was asleep and his telephone was ringing. She then awakened Faulconer, who told her that Gregory had been there the night before but had left to go home. If Hall's testimony were believed, Appellant did not kill Faulconer during a fight shortly after 3:00 a.m., but returned to Faulconer's residence and killed him sometime after 8:00 a.m.

## I. DISCOVERY.

Appellant filed a motion for discovery of all records of the Covington Police Department pertaining to the victim. At a hearing on the motion, the trial court essentially told the parties to "work it out." Appellant claims the Commonwealth furnished him with records of three separate instances of prior violent misconduct on the part of Faulconer. His claim of a discovery violation is premised upon the testimony of Covington Police Detective Bud Vallandingham that he had been to Faulconer's residence on at least 150–200 occasions and that several of those visits were for acts of violence. Appellant's claim relates not so much to a claimed discovery violation as to the fact that the trial court ruled that evidence of particular violent acts by Faulconer *of which Appellant was unaware* was inadmissible. Obviously, Appellant could not have been prejudiced by a failure to obtain evidence of misconduct by Faulconer that was inadmissible.

■ Appellant posits that whenever a claim of self-defense is asserted, any evidence tending to show that the victim was a violent person is admissible. He is mistaken. Generally, a homicide defendant may introduce evidence of the victim's character for violence in support of a claim that he acted in self-defense or that the victim was the initial aggressor. KRE 404(a)(2); *Johnson v. Commonwealth*, Ky., 477 S.W.2d 159, 161 (1972); Robert G. Lawson, *The Kentucky Evidence Law Handbook* § 2.15[4][b], at 104 (4th ed. LexisNexis 2003). However, such evidence may only be in the form of reputation or opinion, not specific acts of misconduct. KRE 405(a); Lawson, *supra*, § 2.20[4], at 116 ("By providing only for the use of reputation or opinion evidence in this situation, the rule plainly implies a prohibition on evidence of particular acts of conduct."). Specifically, in *Johnson*, our predecessor court held that a homicide defendant could not introduce the victim's police record for the purpose of showing his propensity for violence. *Johnson*, 477 S.W.2d at 161.

■ An exception exists, however, when evidence of the victim's prior acts of violence, threats, and even hearsay evidence of such acts and threats, is offered to prove that the defendant so feared the victim that he believed it was necessary to use physical force (or deadly physical force) in self-protection, "provided that the

defendant knew of such acts, threats, or statements at the time of the encounter." Lawson, *supra,* § 2.15[4][d], at 105–06. *See also Commonwealth v. Higgs,* Ky., 59 S.W.3d 886, 892 (2001); *Commonwealth v. Davis,* Ky., 14 S.W.3d 9, 14 (2000); *Wilson v. Commonwealth,* Ky.App., 880 S.W.2d 877, 878 (1994). In that scenario, the evidence is not offered to prove the victim's character to show action in conformity therewith but to prove the defendant's state of mind (fear of the victim) at the time he acted in self-defense. "Obviously, such evidence could not be used to prove fear by the accused without accompanying proof that the defendant knew of such matters at the time of the alleged homicide or assault." Lawson, *supra,* § 2.15[4][d], at 106 (citing *Baze v. Commonwealth,* Ky., 965 S.W.2d 817, 824–25 (1997)).

■ The trial court allowed Appellant to testify to six specific incidents of prior violent conduct by Faulconer of which Appellant had knowledge at the time he killed Faulconer. Presumably, Appellant was unaware at the time of the killing of any other prior acts of violence by Faulconer as he did not offer evidence of any other such acts. Any evidence contained in the Covington Police Department's records of acts of misconduct by Faulconer of which Appellant was unaware was neither relevant nor exculpatory, thus was inadmissible; and the failure to provide such evidence was not prejudicial.

## II. BATSON.

■ The prosecutor used a peremptory strike to excuse Juror No. 102, the lone African–American on the jury panel. Although Appellant is Caucasian, it is well settled that he has standing to raise the Equal Protection issue. *Campbell v. Louisiana,* 523 U.S. 392, 118 S.Ct. 1419, 140 L.Ed.2d 551 (1998); *Powers v. Ohio,* 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991). When asked to state his reason for striking Juror No. 102, the prosecutor responded that his office had previously prosecuted members of the juror's family. The trial judge accepted the explanation as race-neutral and not pretextual, and we conclude that the trial judge's finding in this respect was not clearly erroneous. *Caudill v. Commonwealth,* Ky., 120 S.W.3d 635, 667 (2003). *See Berry v. Commonwealth,* Ky.App., 84 S.W.3d 82, 88–89 (2001) (exercise of peremptory strike against juror who admitted that family members had been criminally prosecuted did not violate *Batson* ).

## III. COMPETENCY OF COMMONWEALTH'S EVIDENCE.

■ In addition to introducing the crime scene evidence, the Commonwealth proved the cause of death through the testimony of the pathologist who conducted the postmortem examination of Faulconer's body. At the conclusion of the Commonwealth's case, Appellant moved for a directed verdict of acquittal because the crime scene evidence was presented by witnesses other than the coroner, and proof of cause of death came from a witness other than the coroner. He relies on KRS 72.020(2):

> The coroner shall take possession of any objects, medical specimens, or articles which, in his opinion, may be helpful in establishing the cause of death, and he can make or cause to be made such tests and examinations of said objects as may be necessary or useful in determining the cause of death. In the event that a criminal prosecution arises, all such objects and articles together with reports of any examination made upon them, shall be retained by the coroner until their production in evidence is required by the prosecuting authority, unless oth-

erwise directed by written order of the court in which such prosecution is pending.

Manifestly, this statute is not a rule of evidence. To the extent that it imposes duties on the coroner, any violation of those duties does not affect the admission of relevant, competent, and properly identified evidence at a homicide trial. Even if it could be argued that the evidence at trial was obtained by the police in violation of KRS 72.020(2), such would not require its exclusion. *Brock v. Commonwealth,* Ky., 947 S.W.2d 24, 29 (1997) (exclusionary rule applies only to evidence obtained in violation of a constitutional right). Finally, Appellant did not register a contemporaneous objection to any of this evidence at the time it was introduced. KRE 103(a)(1); RCr 9.22. This claim is as meritless as it is novel.

## IV. WANTON MURDER.

Appellant claims he was prejudiced by the fact that the trial court overruled his motion for a directed verdict of acquittal on the Commonwealth's theory of wanton murder. The Commonwealth theorized that if Appellant killed Faulconer under a mistaken belief in the need to use deadly physical force in self-protection, that mistaken belief was so wantonly held as to manifest an extreme indifference to human life, thus rising to the level of wanton murder. We specifically rejected that theory in *Elliott v. Commonwealth,* Ky., 976 S.W.2d 416 (1998):

> [T]he "wanton or reckless belief" analysis has no application to a charge of wanton murder, because the existence of an actual subjective belief in the need to act in self-protection necessarily precludes a finding of the element of "extreme indifference to the value of human life" required by KRS 507.020(1)(b).

*Id.* at 420 n. 3 (citing Robert G. Lawson & William H. Fortune, *Kentucky Criminal Law* § 4–2(3)(3), at 152 n. 90 (1998)). *See also Commonwealth v. Hager,* Ky., 41 S.W.3d 828, 842 (2001).

Nevertheless, the trial court withheld ruling on the motion until after Appellant testified that he acted in self-defense, then effectively granted a directed verdict of acquittal on this theory by failing to include it in the jury instructions. *Kotila v. Commonwealth,* Ky., 114 S.W.3d 226, 236 (2003). Appellant offers no plausible explanation as to how he was prejudiced by the fact that the trial court reserved its ruling on the issue until after hearing Appellant's self-defense evidence instead of directing a verdict of acquittal on the issue at the conclusion of the Commonwealth's case. Although Appellant suggests that the ruling forced him to testify in his own defense, that claim rings hollow in view of the admission during the Commonwealth's case of his out-of-court statements that he killed Faulconer, the Commonwealth's proof that blood stains on his shoes matched Faulconer's DNA profile, and the fact that his only defense was self-protection.

## V. INSTRUCTIONS.

The trial court instructed the jury in Instruction No. V on intentional murder, KRS 507.020(1)(a), and in Instruction No. VI on both theories of manslaughter 1st, *i.e.,* intent to injure but not to kill, KRS 507.030(1)(a), and intent to kill but under extreme emotional disturbance, KRS 507.030(1)(b). The court then instructed the jury as follows with respect to the defense of self-protection:

### INSTRUCTION NO. VII

Even though the defendant might otherwise be guilty of Murder under Instruction V, or First Degree Manslaugh-

ter under Instruction VI, if at the time the defendant killed Roy Thomas Faulconer he believed that Roy Thomas Faulconer was then and there about to use, or believed there was an impending danger that Roy Thomas Faulconer would use physical force upon him, he was privileged to use such physical force against Roy Thomas Faulconer as he believed to be necessary in order to protect himself against it, but including the right to use deadly physical force in so doing only if he believed it to be necessary in order to protect himself from death or serious physical injury at the hands of Roy Thomas Faulconer.

Provided, however, if you believe from the evidence beyond a reasonable doubt that the defendant was mistaken in his belief that it was necessary to use physical force against Roy Thomas Faulconer in self-protection, or in his belief in the degree of force necessary to protect himself,

AND

A. That when he killed Roy Thomas Faulconer he was aware of and consciously disregarded a substantial and unjustifiable risk that he was mistaken in that belief, and that his disregard of that risk constituted a gross deviation from the standard of care that a reasonable person would have observed in the same situation, then you shall not find the defendant guilty of Murder under Instruction V or First Degree Manslaughter under Instruction VI, but shall instead find him guilty of Second Degree Manslaughter under this instruction;

OR

B. That when he killed Roy Thomas Faulconer he failed to perceive a substantial and unjustifiable risk that he was mistaken in that belief, and that his failure to perceive that risk constituted a gross deviation from the standard of care that a reasonable person would have observed in the same situation, then you shall not find the defendant guilty of Murder under Instruction V or First Degree Manslaughter under Instruction VI, but shall instead find him guilty of Reckless Homicide under this instruction.

Thus, the self-protection instruction was substantially the same as specimen Instruction No. 7 recommended in *Hager*, 41 S.W.3d at 846–47 (though *Hager* was decided after the trial of this case). The trial court's instructions also included verdict forms for the jury to use in finding Appellant not guilty, guilty of murder under Instruction No. V, guilty of manslaughter 1st under Instruction No. VI, guilty of manslaughter 2nd under Instruction No. VII A, or guilty of reckless homicide under Instruction No. VII B.

Appellant's only objection to the instructions at trial was to the wanton and reckless belief qualifications that would have allowed the jury to convict him of manslaughter 2nd or reckless homicide even if the jury found that he subjectively believed it was necessary to use deadly physical force against Faulconer in self-defense. He does not raise the same objection on appeal. Instead, he claims that the trial court confused the jury by not giving "stand alone" instructions on manslaughter 2nd and reckless homicide as set forth in Instructions Nos. 5 and 6 of the specimen instructions recommended in *Hager*, 41 S.W.3d at 845–46. In *Hager*, however, there was evidence that the defendant had unintentionally killed the victim, thus providing an evidentiary basis for a conviction not only of manslaughter 2nd or reckless homicide, but also of wanton murder (see specimen Instruction No. 3 B(2) in *Hager*, at 845).

To reiterate, there are two theories under which a defendant can be con-

victed of manslaughter 2nd: (1) the defendant acted without an intent to kill but with an awareness and conscious disregard of a substantial and unjustifiable risk that his action would result in the victim's death, KRS 507.040(1); KRS 501.020(3); and (2) the defendant acted either with or without an intent to kill but under an actual but mistaken belief that the circumstances then existing required the use of physical force (or deadly physical force) in self-protection, and with an awareness and conscious disregard of a substantial and unjustifiable risk that such belief was mistakenly held. KRS 501.020(3); KRS 503.120(1). Both theories require that the risk (that death would result or that the belief in the need to act in self-protection was mistakenly held) was of such nature and degree that disregard thereof constituted a gross deviation from the standard of care that a reasonable person would observe in the situation. KRS 501.020(3). Wanton disregard of the risk that the defendant's actions would result in the victim's death supplies the element of wantonness necessary to convict of manslaughter 2nd under the theory set forth in KRS 507.040(1). Wanton disregard of the risk that the belief in the need to use physical force (or deadly physical force) in self-protection was mistakenly held supplies the element of wantonness necessary for conviction under the theory set forth in KRS 503.120(1). *Elliott*, 976 S.W.2d at 419–20.

Similarly, there are two theories under which a defendant can be convicted of reckless homicide: (1) the defendant acted without an intent to kill but failed to perceive a substantial and unjustifiable risk that his actions would result in the victim's death, KRS 507.050(1); KRS 501.020(4); and (2) the defendant acted either with or without an intent to kill but under an actual but mistaken belief that the circumstances then existing required the use of physical force (or deadly physical force) in self-protection, and failed to perceive a substantial and unjustifiable risk that such belief was mistakenly held. KRS 501.020(4); KRS 503.120(1). As with manslaughter 2nd, both theories of reckless homicide require that the risk (that death would result or that the belief in the need to act in self-protection was mistakenly held) was of such nature and degree that failure to perceive it constituted a gross deviation from the standard of care that a reasonable person would observe in the situation. KRS 501.020(4). Reckless failure to perceive the risk that the defendant's actions would result in the victim's death supplies the element of recklessness necessary to convict of reckless homicide under the theory set forth in KRS 507.050(1). Reckless failure to perceive the risk that the belief in the need to use physical force (or deadly physical force) in self-protection was mistakenly held supplies the element of recklessness necessary for conviction of reckless homicide set forth in KRS 503.120(1). *Elliott*, 976 S.W.2d at 420.

Here, there was no evidence to support a conviction of manslaughter 2nd under KRS 507.040(1) or reckless homicide under KRS 507.050(1) because there was no evidence that Appellant did not intend to kill Faulconer. Appellant admitted as such in his written motion for a directed verdict on the issue of wanton murder:

> The Commonwealth's case has been entirely predicated upon the supposition that the Defendant Saylor was intentional in his conduct and that he meant to kill Faulconer. There has been no proof of wanton behavior by the Defendant.... There has been proof of intentional actions, of a fight and threats, and of a stabbing of Faulconer, but no proof of wanton conduct.

Nor did Appellant testify to anything other than an intentional killing when he testified in his own behalf. His theory of the case was that he knew Faulconer was such a dangerous and violent man that he (Appellant) had no choice but to use deadly physical force against Faulconer in self-protection. Thus, the only evidentiary basis for a conviction of manslaughter 2nd or reckless homicide was that Appellant was wanton or reckless in his belief in the need to use deadly physical force in self-protection. There was no evidentiary basis for "stand alone" instructions on manslaughter 2nd or reckless homicide premised upon a theory that Appellant unintentionally killed Faulconer.

Accordingly, the decision of the Court of Appeals is affirmed.

All concur.