# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

# $\mathfrak{Supreme\ Court\ of\ Kentucky}$

## 2008-SC-000914-MR

KEITH K. MOORE

APPELLANT

V.

ON APPEAL FROM BULLITT CIRCUIT COURT
HONORABLE RODNEY D. BURRESS, JUDGE
NO. 07-CR-00049

COMMONWEALTH OF KENTUCKY

APPELLEE

## MEMORANDUM OPINION OF THE COURT

## AFFIRMING

Appellant, Keith K. Moore, appeals as a matter of right[1] from a judgment entered upon a jury verdict by the Bullitt Circuit Court convicting him of murder, complicity to tampering with physical evidence, first-degree unlawful imprisonment, complicity to retaliating against a participant in a legal process, and second-degree wanton endangerment. For these crimes, Moore was sentenced to life imprisonment.

On appeal, Moore contends that the trial court erred by limiting his introduction of prior threats made against him by the victim; by giving incomplete self-defense instructions; and by failing to hold a pretrial hearing addressing the immunity provisions contained in KRS 503.085. For the reasons stated below, we affirm.

---

[1] Ky. Const. § 110(2)(b).

## I. FACTUAL AND PROCEDURAL BACKGROUND

In the light most favorable to the verdict, the facts are as follows. In December 2006, Moore and murder victim Timothy Nevitt were living together in a trailer owned by Moore's father. Moore's father objected to Nevitt living in the trailer and told Moore that Nevitt would have to move out. On December 31, 2006, Moore told Nevitt he would have to move out of the trailer. Nevitt was displeased about being told to move, and refused to leave. After Moore told Nevitt to leave, Nevitt repeatedly threatened Moore.

On January 16, 2007, Moore shot and killed Nevitt. Nevitt's girlfriend, Danielle Walker, witnessed the shooting. At about 8:00 p.m. that day, Walker, Nevitt, and Moore sat at Moore's kitchen table, and began discussing Nevitt moving out of the trailer. Moore said to the effect that he did not want "to hear Nevitt's mouth anymore," and that he loved Nevitt. Moore then stood up, pulled a gun from the back of his pants, and shot Nevitt twice, killing him.

Afterward, Moore called a friend, Mark McCubbins, and asked him to help hide Nevitt's body. McCubbins refused, but when asked by Moore if he would "take care" of Walker if he got locked up, McCubbins said that he would. Walker interpreted the exchange to mean that McCubbins agreed to kill her in the event Moore was arrested.

Moore and Walker went to Paul Cipparone's residence, picked him up, and returned to the trailer. They loaded Nevitt's body into the trunk, drove to an area near the trailer, covered the body with branches and twigs, and left.

2

The next day, Moore and Walker parked Nevitt's vehicle at a bar to try and make it look like he had been there drinking. Moore threatened Walker that if she tried to escape, he would shoot her.

On January 18, 2007, Moore told Walker that he was going to leave but that he had someone watching the trailer, and if she tried to leave the person watching would kill her. Once Moore was gone, Walker called the police and told them what happened. Based upon Walker's information, Moore was arrested.

Following his arrest, Moore gave a statement to the police in which he claimed that Nevitt had repeatedly threatened him. He stated that on January 16, 2007, Nevitt again threatened him and attacked him with a knife. He claimed that as a result of the knife attack, he shot Nevitt in self-defense. Moore did not testify at trial, but his statement to police was played to the jury.

Based upon the above events, in February 2007, Moore was indicted by the Bullitt County Grand Jury and charged with: murder for shooting Nevitt; complicity to tampering with physical evidence for the attempted cover-up following the shooting; kidnapping for detaining Walker for two days following the shooting; complicity to retaliating against a participant in a legal process for acting with McCubbins to threaten to "take care" of Walker in the event Moore was arrested; and first-degree wanton endangerment for holding a handgun to Walker's head during the course of the events.

Following a jury trial, the jury found Moore guilty of: murder; complicity

3

to tampering with physical evidence; the lesser included offense of first-degree unlawful imprisonment (he was acquitted on the charge of kidnapping); complicity to retaliating against a participant in a legal process; and the lesser included offense of second-degree wanton endangerment (he was acquitted on the charge of first-degree wanton endangerment). The jury recommended a total sentence of life imprisonment. On November 26, 2008, the trial court entered judgment in accordance with the jury's verdict and sentencing recommendation. This appeal followed.

## II. THE TRIAL COURT PROPERLY LIMITED TESTIMONY RELATING TO NEVITT'S THREATS AGAINST MOORE

Moore first argues that the trial court erred by excluding threatening statements made by Nevitt against him prior to January 1, 2007.[2] He alleges that the exclusion of the statements violated the evidentiary rule that a defendant is entitled to admit into evidence prior threats made by the victim against the defendant that the defendant knows about, and also violated his constitutional right to present a defense.

At trial, Moore argued that the shooting was in self-defense, and sought to admit the threatening statements Nevitt made before the shooting. The trial court ruled that only the threats made by Nevitt after Moore ordered him to leave the trailer on December 31, 2006, would be admissible. The trial court reasoned that Moore's demand that Nevitt leave the trailer was the onset of the

---

[2] Moore had identified December 31, 2006, as the day of the request to leave, but the trial court used the next day, January 1, 2007, as the cut-off day. The difference is of no significance because no threat made on December 31, 2006, was excluded.

4

relevant conflict, and accordingly that only the threats made after that date were relevant.

During the trial, several threats made by Nevitt toward Moore were admitted into evidence. However, Moore also sought to admit testimony from Buddy Arnett and Donald Hutton regarding threats by Nevitt made prior to January 1, 2007. The trial court excluded the evidence, and Moore instead placed the statements into the record by avowal.

Arnett testified by avowal that he heard a phone message Nevitt left for Moore. In the message Nevitt told Moore that he was not going to leave the trailer and was going to make it so that Moore would have to kill him. Arnett did not know when the message was left, but Moore had played it for him "maybe a week" before the date of the shooting. Hutton stated in his avowal testimony that he heard Nevitt threaten Moore "around the holidays" in 2006.

The rule concerning the admissibility of prior threats made by the victim against the defendant which the defendant knows about is explained in *Saylor v. Commonwealth*, 144 S.W.3d 812, 816-817 (Ky. 2004):

> Generally, a homicide defendant may introduce evidence of the victim's character for violence in support of a claim that he acted in self-defense or that the victim was the initial aggressor. KRE 404(a)(2); *Johnson v. Commonwealth*, Ky., 477 S.W.2d 159, 161 (1972); Robert G. Lawson, The Kentucky Evidence Law Handbook § 2.15[4][b], at 104 (4th ed. LexisNexis 2003). However, such evidence may only be in the form of reputation or opinion, not specific acts of misconduct. KRE 405(a); Lawson, *supra*, § 2.20 [4], at 116 ("By providing only for the use of reputation or opinion evidence in this situation, the rule plainly implies a prohibition on evidence of particular acts of conduct."). Specifically, in *Johnson*, our predecessor court held that a homicide defendant could not

5

introduce the victim's police record for the purpose of showing his propensity for violence. *Johnson*, 477 S.W.2d at 161.

An exception exists, however, when evidence of the victim's prior acts of violence, threats, and even hearsay evidence of such acts and threats, is offered to prove that the defendant so feared the victim that he believed it was necessary to use physical force (or deadly physical force) in self-protection, "provided that the defendant knew of such acts, threats, or statements at the time of the encounter." Lawson, *supra*, § 2.15[4][d], at 105-06. *See also Commonwealth v. Higgs*, Ky., 59 S.W.3d 886, 892 (2001); *Commonwealth v. Davis*, Ky., 14 S.W.3d 9, 14 (2000); *Wilson v. Commonwealth*, Ky.App., 880 S.W.2d 877, 878 (1994). In that scenario, the evidence is not offered to prove the victim's character to show action in conformity therewith but to prove the defendant's state of mind (fear of the victim) at the time he acted in self-defense. "Obviously, such evidence could not be used to prove fear by the accused without accompanying proof that the defendant knew of such matters at the time of the alleged homicide or assault." Lawson, supra, § 2.15[4][d], at 106 (citing *Baze v. Commonwealth*, Ky., 965 S.W.2d 817, 824-25 (1997)).

A trial court's ruling with regard to the exclusion of marginally relevant evidence is reviewed on appeal for an abuse of discretion, *Foley v. Commonwealth*, 953 S.W.2d 924, 938 (Ky.1997), *Anderson v. Commonwealth*, 231 S.W.3d 117, 119 (Ky. 2007), *i.e.* "whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

The evidence demonstrates that Moore's demand on December 31, 2006, that Nevitt leave the trailer instigated the conflict leading up to the shooting. Thus, the trial court's ruling which excluded evidence of threats made before that date was not arbitrarily, unreasonably, or unfairly determined. To the contrary, the ruling was designed to freely admit threats made during the

6

relevant time period, and to exclude those that were not. Further, the ruling was based upon established legal principles relating to relevancy contained in KRE 402 and KRE 403. Based upon Moore's own statement, the trial court reasonably defined the relevant time frame, and properly limited threat evidence to this period. It follows that the trial court's ruling limiting the admission of threats was not an abuse of discretion.

Citing *Beaty v. Commonwealth*, 125 S.W.3d 196 (Ky. 2003), Moore also contends that the trial court's ruling violated his constitutional right to present a defense. We disagree.

*Chambers v. Mississippi*, 410 U.S. 284, 302 (1973), states that "where constitutional rights directly affecting the ascertainment of guilt are implicated, [evidentiary rules] may not be applied mechanistically to defeat the ends of justice." As applicable here, Moore's argument is that by excluding threats prior to January 1, 2007, the trial court violated this principle. However, as noted in *Mills v. Commonwealth*, 996 S.W.2d 473, 489 (Ky. 1999), "*Chambers* holds that application of evidentiary rules cannot be applied so as to completely bar all avenues for presenting a viable defense. It does not hold that evidentiary rules cannot be applied so as to properly channel the avenues available for presenting a defense."

Rather than completely barring all avenues for presenting a self-defense theory, the trial court's ruling allowed the admission of multiple instances of Nevitt's threats against Moore. For example, Moore concedes in his brief that

7

one witness testified that Moore and Nevitt "were always going at it," that both "exchanged threats," and that Nevitt frequently threatened to beat Moore up. Another witness testified that after Moore asked Nevitt to move out, Nevitt "would threaten [Moore] and it would be confrontational. [Nevitt] wouldn't leave. He'd start running his mouth with [Moore]," and that whenever Moore would tell Nevitt to leave, Nevitt "would bust back into the trailer." A third witness testified that about a week before Nevitt's death, Nevitt "came face-to-face" with defendant, they cussed each other, and Nevitt "reached for his pocket." Further, Moore's father testified regarding a telephone message wherein Nevitt warned Moore to "be ready to meet your maker" and threatened to kill Moore's family. In addition, the jury heard Moore's statement to police where he recounted several threats made by Nevitt.

Thus, substantial evidence concerning threats made by Nevitt following the demand that he leave the trailer was presented to the jury. The point that Nevitt had threatened Moore was more than adequately made under the trial court's ruling. Accordingly, the additional threats sought to be presented by Moore were cumulative to the threats that were admitted. There was no violation of Moore's constitutional right to present a defense.

In summary, the trial court properly excluded threats made by Nevitt which preceded Moore's order to vacate the trailer on December 31, 2006.

III. THERE WAS NO ERROR IN THE SELF-DEFENSE INSTRUCTIONS

Moore next claims that the trial court failed to give a proper self-

protection instruction. He contends that the instructions erroneously: (1) failed to instruct the jury of his right to use self-defense in protection of his property pursuant to KRS 503.080; (2) failed to instruct the jury of his right to use self-defense to protect against a robbery or other violent felony pursuant to KRS 503.080; and (3) failed to instruct the jury that he had no duty to retreat pursuant to KRS Chapter 503.

Protection of Property

In his tendered instructions, Moore's self-protection instruction substantially mirrored the instruction ultimately given by the trial court. The murder instruction, second-degree manslaughter instruction, and reckless homicide instruction permitted conviction only if, in shooting Nevitt, Moore "was not privileged to act in self protection." However, Moore's tendered instruction, in addition, would have permitted conviction only if Moore "was not privileged to act in protection of his property." The trial court sustained the Commonwealth's objection to the instruction.

The statutory provision relied upon by Moore in support of the protection of property instruction is KRS 503.080, which provides, in relevant part, as follows:

> (2) The use of deadly physical force by a defendant upon another person is justifiable under subsection (1) only when the defendant believes that the person against whom such force is used is:
>
> . . . .
>
> > (b) Committing or attempting to commit a burglary, robbery, or other felony involving the use of force, or under those

9

circumstances permitted pursuant to KRS 503.055, of such dwelling;

It is the trial court's duty to instruct jurors on the whole law of the case, including every theory "deducible or supported to any extent by the testimony." *Taylor v. Commonwealth*, 995 S.W.2d 355, 360 (Ky. 1999).

The evidence in support of a self-protection instruction was that Nevitt was attacking Moore with a knife at the time of the shooting. However, the evidence further demonstrated that Nevitt's motive for the alleged knife attack was anger at being ordered to leave the trailer. No evidence was presented indicating that Nevitt sought to rob or steal from Moore, or to damage his property. There is no duty to instruct on a theory unsupported by the proof. *Payne v. Commonwealth*, 656 S.W.2d 719, 721 (Ky. 1983). As such, the trial court properly denied the proposed protection of property instruction.

Protection against Robbery or other Violent Felony

Also in reliance upon KRS 503.080(2)(b), Moore contends that the trial court erred by failing to instruct the jury on his entitlement to use self-protection against a robbery or other felony involving the use of force. Moore concedes that this issue is not preserved, and requests palpable error review pursuant to RCr 10.26.

As explained above, the only motive demonstrated by the evidence for any attack by Nevitt against Moore was his anger at being asked to leave the trailer. There was no evidence presented of a robbery motive. In his statement

10

to police, Moore did not allege that Nevitt was attempting to rob him at the time of the shooting. Nor does Moore identify any "other felony involving the use of force" which would not be encompassed in the self-protection instruction that was given, which authorized him to "use deadly physical force [if] in so doing . . . he believed it to be necessary in order to protect himself from death or serious physical injury at the hands of Timothy Nevitt."

Thus, no error occurred, and, even if we were to conclude otherwise, any error was not palpable error. *Brewer v. Commonwealth*, 206 S.W.3d 343, 349 (Ky. 2006) (Explaining that palpable error requires a substantial possibility that the outcome of the defendant's case would have been different absent the error.)

Duty to Retreat

Lastly, Moore contends that the trial court erred by failing to instruct the jury, pursuant to KRS Chapter 503, that he did not have a duty to retreat from Nevitt's alleged knife attack. Moore concedes that this issue is not preserved, but requests palpable error review.

KRS 503.055(3) provides "A person who is not engaged in an unlawful activity and who is attacked in any other place where he or she has a right to be has no duty to retreat and has the right to stand his or her ground and meet force with force, including deadly force, if he or she reasonably believes it is necessary to do so to prevent death or great bodily harm to himself or herself or another or to prevent the commission of a felony involving the use of force."

11

*See also* KRS 503.080(3); KRS 503.050(4); KRS 503.070(3).

The criminal conduct giving rise to the murder charge occurred after the effective date of the codification of the no duty to retreat rule into KRS Chapter 503. *See Hannah v. Commonwealth,* 306 S.W.3d 509, 514-515 (Ky. 2010). Accordingly, if requested, a no duty to retreat instruction would have been proper. *See* William S. Cooper and Donald P. Cetrulo, *Kentucky Instructions to Juries,* Criminal § 11.07 (5th ed. 2007).

However, "the jury undoubtedly took into consideration the situs of the shooting in deciding the crucial issue of whether the appellant was justified in using the amount of force he did in repelling" the alleged attack by Nevitt. *Combs v. Commonwealth,* 306 S.W.2d 269, 271 (Ky. 1957). As such, we are persuaded that there is not a reasonable possibility that any error resulting from the omission of the instruction affected the verdict.

### IV.  THE TRIAL COURT ERRED BY FAILING TO CONDUCT A PRETRIAL HEARING PURSUANT TO KRS 503.085, BUT THE ERROR WAS HARMLESS

Moore lastly argues that the trial court erred by failing to conduct a pretrial hearing addressing the immunity provisions contained in KRS 503.085.

Prior to trial, Moore filed a motion requesting the trial court to dismiss the murder charge based upon the immunity provisions contained in KRS 503.085. The motion further requested a hearing to determine if he was entitled to protection under the statute. The Commonwealth responded in opposition. On October 16, 2007, the trial court entered an order denying the

12

motion, stating,

> Where the Defendant has alleged self defense and that claim was submitted to the Grand Jury, as in this case, this Court does not believe that a Defendant is entitled to a pretrial hearing where a trial judge would second guess the Grand Jury and determine, based upon the evidence, if he is immune from prosecution pursuant to KRS 503.085(1).

The trial court denied Moore's motion to reconsider the ruling.

KRS 503.085 provides, in relevant part, as follows:

> (1) A person who uses force as permitted in KRS 503.050,[3] 503.055,[4] 503.070,[5] and 503.080[6] is justified in using such force and is immune from criminal prosecution and civil action for the use of such force, unless the person against whom the force was used is a peace officer, as defined in KRS 446.010, who was acting in the performance of his or her official duties and the officer identified himself or herself in accordance with any applicable law, or the person using force knew or reasonably should have known that the person was a peace officer. As used in this subsection, the term "criminal prosecution" includes arresting, detaining in custody, and charging or prosecuting the defendant.

> (2) A law enforcement agency may use standard procedures for investigating the use of force as described in subsection (1) of this section, but the agency may not arrest the person for using force unless it determines that there is probable cause that the force that was used was unlawful.

In *Rodgers v. Commonwealth*, 285 S.W.3d 740 (Ky. 2009), we discussed the parameters of the statute in relation to a defendant's entitlement to pretrial review for a determination of whether KRS 503.085's immunity provisions apply:

---

[3] Use of physical force in self-protection.

[4] Use of defensive force regarding dwelling, residence, or occupied vehicle.

[5] Protection of another.

[6] Protection of property.

. . . . [T]he only express indication of legislative intent is in KRS 503.085(2) which provides that immunity must be granted pre-arrest by the law enforcement agency investigating the crime unless there is 'probable cause that the force used was unlawful.' Because the statute defines the 'criminal prosecution' from which a defendant justifiably acting in self-defense is immune to be 'arresting, detaining in custody and charging or prosecuting,' we can infer that the immunity determination is not confined to law enforcement personnel. Instead, the statute contemplates that the prosecutor and the courts may also be called upon to determine whether a particular defendant is entitled to KRS 503.085 immunity. Regardless of who is addressing the immunity claim, we infer from the statute that the controlling standard of proof remains 'probable cause.' Thus, in order for the prosecutor to bring charges or seek an indictment, there must be probable cause to conclude that the force used by the defendant was not fully justified under the controlling provision or provisions of KRS Chapter 503. Similarly, once the matter is before a judge, if the defendant claims immunity the court must dismiss the case unless there is probable cause to conclude that the force used was not legally justified.

. . . . Just as judges consider the totality of the circumstances in determining whether probable cause exists to issue a search warrant, they must consider all of the circumstances then known to determine whether probable cause exists to conclude that a defendant's use of force was unlawful. If such cause does not exist, immunity must be granted and, conversely, if it does exist, the matter must proceed.

Because immunity is designed to relieve a defendant from the burdens of litigation, it is obvious that a defendant should be able to invoke KRS 503.085(1) at the earliest stage of the proceeding. While the trial courts need not address the issue sua sponte, once the defendant raises the immunity bar by motion, the court must proceed expeditiously. Thus a defendant may invoke KRS 503.085 immunity and seek a determination at the preliminary hearing in district court *or, alternatively, he may elect to await the outcome of the grand jury proceedings and, if indicted, present his motion to the circuit judge.* A defendant may not, however, seek dismissal on immunity grounds in both courts. Once the district court finds probable cause to believe that the defendant's use of force was unlawful, the circuit court should not revisit the issue. *In the case of a direct submission or where a defendant has elected to wait and*

*invoke immunity in the circuit court, the issue should be raised promptly so that it can be addressed as a threshold motion.*

The sole remaining issue is how the trial courts should proceed in determining probable cause. The burden is on the Commonwealth to establish probable cause and it may do so by directing the court's attention to the evidence of record including witness statements, investigative letters prepared by law enforcement officers, photographs and other documents of record. Although Rodgers advocates an evidentiary hearing at which the defendant may counter probable cause with proof 'by a preponderance of the evidence' that the force was justified, this concept finds no support in the statute. *The legislature did not delineate an evidentiary hearing and the only standard of proof against which a defendant's conduct must be measured is the aforementioned probable cause. We decline to create a hearing right that the statute does not recognize* and note that there are several compelling reasons for our conclusion.

*Id.* at 755. (emphasis added).

As the discussion from *Rodgers* reflects, the trial court erred by concluding that it was not authorized to "second-guess" the Grand Jury. *Rodgers* specifically provides that a defendant may elect to wait until after his indictment and then bring his immunity claim in the circuit court. Thus, Moore was entitled to an independent probable cause review, after the indictment, by the trial court without deference to the Grand Jury's determinations. Accordingly, the trial court erred by failing to undertake an individualized probable cause review.

However, as explained in *Rodgers*, Moore was not entitled to an evidentiary hearing to address his claim of immunity. The trial court properly denied his motion for an evidentiary hearing.

15

Nevertheless, as in *Rodgers*, the trial court's failure[7] to conduct an independent probable cause review "is purely academic" as to Moore "because he has been tried and convicted by a properly instructed jury in a trial with no reversible error." *Id.* at 756. "In short, his self-defense claim has been thoroughly examined by both the trial judge under the directed verdict standard and the jury under the court's instructions and his entitlement to self-defense has been rejected." *Id.* Moore suffered no discernible prejudice. Indeed, if the trial court had followed the procedure outlined in *Rodgers*, "applying the probable cause standard would have produced the same conclusion, no entitlement to immunity and denial of [Moore's] motion to dismiss." *Id.* Accordingly, the error was harmless.

## V. CONCLUSION

For the foregoing reasons the judgment of the Bullitt Circuit Court is affirmed.

Abramson, Cunningham, Noble, Schroder, Scott and Venters, JJ., concur. Minton, C.J., concurs in result only.

---

[7] *Rodgers* was rendered June 25, 2009, and the trial court did not have the benefit of its guidance at the time it was considering Moore's motion for a determination of his entitlement to immunity under KRS 503.085.

16

COUNSEL FOR APPELLANT:

Jamesa J. Drake
Assistant Public Advocate
Department of Public Advocacy
100 Fair Oaks Lane, Suite 301
Frankfort, Kentucky 40601


COUNSEL FOR APPELLEE:

Jack Conway
Attorney General

Jeffrey Allan Cross
Assistant Attorney General
Criminal Appellate Division
Office of the Attorney General
1024 Capital Center Drive
Frankfort, Kentucky 40601