RENDERED:  SEPTEMBER 1, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0748-MR

DAVID TAYLOR                                                        APPELLANT

APPEAL FROM CLAY CIRCUIT COURT
v.        HONORABLE OSCAR GAYLE HOUSE, JUDGE
ACTION NO. 20-CR-00025

COMMONWEALTH OF KENTUCKY                                            APPELLEE

OPINION AND ORDER
AFFIRMING
AND STRIKING ARGUMENT II FROM APPELLANT'S BRIEF

** ** ** ** **

BEFORE:  CETRULO, ECKERLE, AND GOODWINE, JUDGES.

ECKERLE, JUDGE:  David Dwayne Taylor ("Taylor") killed his uncle Carl

Roberts ("Roberts").  After a jury found Taylor guilty of First-Degree

Manslaughter and sentenced him to imprisonment for 16 years, Taylor appeals as a

matter of right.

# BACKGROUND

Roberts perished when Taylor cut Roberts's neck with Roberts's own machete, severing his carotid artery and jugular vein. At his trial, Taylor admitted to killing Roberts, stating, "I done what I had to . . . I took his life." Taylor claimed he was acting in self-defense.

The facts leading up to the killing are not largely disputed. On February 28, 2020, Taylor was released from the Clay County Detention Center. Taylor was limping and recently had hernia surgery. After visiting his mother, Taylor found out he could stay at his mother's residence. Roberts, his uncle, had just that day moved into the same residence with his on-and-off girlfriend, Freda Smith ("Smith").

Taylor had previously stolen a four-wheeler from Roberts's son some six years prior. Taylor served jail time as a result and believed Roberts was holding a grudge. Taylor had heard stories about Roberts's paranoia and potentially violent past. Taylor also knew Roberts got high on drugs and became increasingly paranoid. Roberts also carried around a machete and liked to throw it at trees and telephone poles, as evidenced by a Facebook video that was introduced at trial.

Taylor eventually ended up at his mother's residence with Roberts and Smith. Taylor testified that he ate some food. Taylor also had a marijuana joint,

and though he planned on smoking it the next day, he gave half of it to Roberts after Roberts indicated he wanted some of it. Smith was asleep when the events leading to Roberts's death occurred.

Roberts eventually told Taylor that he was hurt by Taylor stealing the four-wheeler. Taylor apologized and went to the kitchen to get some food. Upon returning to the room where Roberts still remained, Taylor noticed Roberts honing the machete. Taylor asked to look at it, and Roberts led Taylor outside. Taylor then claimed Roberts threw the machete right past Taylor's face and into a tree. Taylor believed Roberts was beginning to feel the effects of the marijuana he had allegedly smoked.

The toxicology reports had no indications that Roberts was under the influence of marijuana, but Roberts's blood did indicate that he had taken Neurontin. Roberts's urine indicated past methamphetamine use, but no indications of active intoxication from methamphetamine.

Regardless, Taylor testified that Roberts said, "You're gonna die, bastard, for stealing my son's four-wheeler." According to Taylor, Roberts had the machete in his hand, so Taylor began to fight Roberts to protect both of them.

In the ensuing melee, Taylor claimed that Roberts said, "You're gonna die, bastard," and that Roberts was on top of Taylor. Taylor claimed he rolled Roberts off of him and informed Roberts that he needed to quit because one

of them was going to die. Eventually, Taylor obtained control of the machete, but Roberts was cut in the process. Taylor claimed that Roberts said, "You cut me, you bastard, you're gonna die." Fighting continued, with head-butting, biting, clawing, and wrestling occurring. Taylor claimed his shoulder was dislocated during the melee. Eventually, Taylor testified that he knew he had to kill Roberts if he wanted to remain alive. So, Taylor claimed he did "what I had to do" and "took his life" by cutting Roberts's throat and neck. Taylor did not flee the scene.

Neighbors testified to what they heard and saw. Brittany Smith, who was next door, heard someone yelling for help and heard a fracas. She heard a person yelling repeatedly for help and specifically heard the person say, "Help, Little Man is going to kill me." Little Man is Taylor's nickname. The voice sounded like an older man's voice. She also went over to see what was happening and noticed Taylor on top of something. She heard gasping and choking noises but did not get closer because a dog kept her at bay.

Terry Allen ("Allen") was also nearby and heard a person screaming, "help me, he's trying to kill me." When he approached, Allen witnessed Taylor on top of Roberts, and he witnessed Roberts attempting to scoot out from underneath Taylor. He saw Taylor work the machete back and forth across Roberts's neck, followed by Roberts's arm lowering.

When the police arrived and surveyed the scene, they found Roberts's back was covered in mud and his pants were partially pulled down. Roberts's neck was cut from the front all the way back to the cervical spine. Taylor was covered in blood, and his back was not as dirty as Roberts's.

A jury found Taylor guilty of First-Degree Manslaughter. Taylor appeals as a matter of right.

## ANALYSIS

Taylor raises two allegations of error in his Appellant's Brief: (1) the Trial Court gave an erroneous instruction on Second-Degree Manslaughter; and (2) the Trial Court gave an erroneous instruction on Reckless Homicide. In his Reply Brief, Taylor summarily requests that we dismiss the second issue. Accordingly, we therefore STRIKE Argument II *in toto* from Appellant's Brief. RAP[1] 11(B)(1).[2]

## I.      Preservation of Second-Degree Manslaughter Claim

Regarding Taylor's remaining claim, the Commonwealth, in a prefatory statement, questions whether the issue is preserved. The Commonwealth notes that Taylor proffered proposed instructions at the beginning of trial, and there

---

[1] Kentucky Rules of Appellate Procedure.

[2] Though we find that Argument II is "so totally lacking in merit that it appears to have been taken in bad faith[,]" RAP 11(B), and we elect to strike that argument, we find no indication that counsel acted in bad faith.

is no discussion on the record after the presentation of proof about the jury instructions. The Commonwealth thus argues that we cannot know if Taylor's "counsel changed positions or agreed to the instructions as written." Appellee's Brief at 6.

Regarding preservation, our Supreme Court has spoken firmly and clearly. "Under the plain language of [RCr[3] 9.54(2)], a party can preserve his objection to jury instructions in one of three alternative ways: (1) by offering an instruction; (2) by motion; or (3) by making a specific objection before the court instructs the jury." *Jerome v. Commonwealth*, 653 S.W.3d 81, 85 (Ky. 2022) (alteration added). "The rule does not require any additional objection or filing so long as one of these three is satisfied." *Id.* In the instant case, Taylor submitted jury instructions that contained different wording for the Second-Degree Manslaughter charge than was given by the Trial Court. Accordingly, we will analyze whether the Trial Court's wording was in error and, if so, whether Taylor's wording was correct.

## II.    Second-Degree Manslaughter Instruction

Taylor argues that the Trial Court erred by not giving his version of a Second-Degree Manslaughter instruction. The Trial Court's instructions on this offense read:

---

[3] Kentucky Rules of Criminal Procedure.

INSTRUCTION NO. 4

SELF PROTECTION

Even though the defendant, David Taylor, might otherwise be guilty of murder under Instruction No. 2 or First Degree Manslaughter under Instruction No. 3, if at the time he killed Carl Roberts (if he did so), he believed that Carl Roberts was then and there about to use physical force upon himself, he was privileged to use such physical force against Carl Roberts as he believed to be necessary in order to protect himself against it, but including the right to use deadly physical force in so doing only if he believed it to be necessary in order to protect himself from death or serious physical injury at the hands of Carl Roberts.

INSTRUCTION NO. 5

SECOND[-]DEGREE MANSLAUGHTER

Provided, however, if you believe from the evidence beyond a reasonable doubt that the defendant, David Taylor, was mistaken in his belief that it was necessary to use physical force against Carl Roberts in protection of himself or in his belief in the degree of force necessary to protect himself;

AND

That when he killed Carl Roberts (if he did so), he was aware of and consciously disregarded a substantial and unjustifiable risk that he was mistaken in that belief, and that his disregard of that risk constituted a gross deviation from the standard of conduct that a reasonable person would have observed in the same situation, then you shall not find the defendant guilty of Murder under Instruction No. 2 or First[-]Degree Manslaughter under Instruction No. 3, but you shall find him guilty of Second[-]Degree Manslaughter under this Instruction.

In comparison, Taylor's proposed instruction read:

> If you do not find David Taylor guilty of Manslaughter in the First Degree under Instruction No. _____, you will find David Taylor Not Guilty of Manslaughter in the Second Degree under this Instruction unless you believe from the evidence beyond a reasonable doubt all of the following:
>
> That in this county on or about February 28, 2020, and before the finding of the Indictment herein, David Taylor killed Carl Roberts through the use of a knife;
>
> That in so doing, he was acting wantonly as that term is defined under Instruction No. ___,
>
> That in so doing, he was not privileged to act in self-protection as defined in Instruction No. _____ (A).

Taylor's proposed self-protection instruction relating to Second-Degree Manslaughter read:

> C. WANTON OR RECKLESS BELIEF QUALIFICATION – Provided further, however, that if you believe from the evidence beyond a reasonable doubt that David Taylor was mistaken in his belief that it was necessary to use physical force against Carl Roberts in self-protection, or mistaken in his belief of the degree of force necessary to protect himself,
>
> AND EITHER
>
> (1) That when he killed Carl Roberts, he was aware of and consciously disregarded a substantial and unjustifiable risk that he was mistaken in that belief, and that his disregard of that risk constituted a gross deviation from the standard of care that a reasonable person would have observed in the same situation, then if you would otherwise find the Defendant guilty of Murder under

instruction No. \_\_\_, or manslaughter in the First Degree under Instruction No. \_\_\_\_, you shall not find him guilty of that offense but shall instead find him guilty of Manslaughter in the Second Degree under this Instruction \_\_ (C)(1)[.[4]]

Taylor argues that the Trial Court's instruction erred by not providing for a "traditional" Second-Degree Manslaughter finding; in other words, it failed to include a finding of Second-Degree Manslaughter without self-defense or imperfect self-defense. Taylor further claims a proper instruction on Second-Degree Manslaughter should have included the following elements: (1) that in Clay County; (2) on or about February 28, 2020; (3) Taylor; (4) killed Carl Roberts through the use of a knife; and (5) that in so doing he was acting wantonly.

RCr 9.54(1) places a duty upon "the court to instruct the jury in writing on the law of the case[.]" That duty includes instructing on lesser-included offenses; however, "[a]n instruction on a lesser included offense is required if the evidence would permit the jury to rationally find the defendant not guilty of the primary offense, but guilty of the lesser offense." *Thomas v. Commonwealth*, 170 S.W.3d 343, 349 (Ky. 2005) (citations omitted).

Under the relevant portion of KRS[5] 507.040(1), a "person is guilty of manslaughter in the second degree when he wantonly causes the death of another

---

[4] This separate instruction on self-protection was included twice in substantially the same form in Taylor's proposed instructions.
[5] Kentucky Revised Statutes.

person . . . ." Read in conjunction with the justification statute, KRS 503.120, there are two theories that could result in a conviction for Second-Degree Manslaughter:

> (1) the defendant acted without an intent to kill but with an awareness and conscious disregard of a substantial and unjustifiable risk that his action would result in the victim's death . . . ; and
>
> (2) the defendant acted either with or without an intent to kill but under an actual but mistaken belief that the circumstances then existing required the use of physical force (or deadly physical force) in self-protection, and with an awareness and conscious disregard of a substantial and unjustifiable risk that such belief was mistakenly held.

*Saylor v. Commonwealth*, 144 S.W.3d 812, 819 (Ky. 2004) (citations omitted).

Here, Taylor unequivocally testified that he acted intentionally and in self-protection when killing Roberts, placing him at best within the second *Saylor* category of Second-Degree Manslaughter. The physical and eyewitness evidence likewise supported that Taylor intentionally killed Roberts. Accordingly, the evidence did not support Taylor's novel theory of "traditional" Second-Degree Manslaughter where he would have acted without an intent to kill but with an awareness and conscious disregard of a substantial and unjustifiable risk that his action would result in the victim's death. Indeed, "instructions not supported by the evidence should not be given[.]" *Malone v. Commonwealth*, 364 S.W.3d 121, 130 (Ky. 2012) (citing *Houston v. Commonwealth*, 975 S.W.2d 925 (Ky. 1998)).

Ostensibly recognizing such, Taylor's Reply Brief on appeal gives a version of the evidence that even he describes as "improbable," where the jury might be able to believe that Taylor was wanton in his belief that he must or should wrestle Roberts for the machete. Reply Brief at 3. This "improbable" version of the events requires us to refrain from simply picking and choosing what parts of Taylor's testimony to believe, and also to turn a blind eye to Taylor's consistent testimony that he intentionally killed Roberts as an act of self-protection. But a lesser-included offense instruction should only be given after consideration of the "the totality of the evidence," *Hudson v. Commonwealth*, 385 S.W.3d 411, 416 (Ky. 2012), and when "it is justified by the evidence." *Martin v. Commonwealth*, 571 S.W.2d 613, 615 (Ky. 1978).

Here, Taylor wanted an instruction on a theory that was not justified by an evidentiary foundation and did not comport with the totality of the evidence. Said another way, the duty to prepare and give instructions on the whole law of the case "does not require an instruction on a theory with no evidentiary foundation." *Houston*, 975 S.W.2d at 929 (citation omitted). Thus, the Trial Court did not err.[6]

---

[6] We must note here that Taylor conflates the wantonness in his wrestling for the machete with the ultimate wantonness in his belief in the need to employ deadly physical force. We need not address this distinction further because the question *sub judice* is whether the Trial Court's jury instructions were correct and supported by the evidence. Given that Taylor repeatedly stated he thought Roberts was going to kill him, and Taylor admitted intentionally almost cutting off Roberts's head, Judge House's decision to give the imperfect self-defense instruction was the only reasonable option for second-degree manslaughter theories. Taylor, after doing "what I had to do" and "t[aking] his life" by intentionally dealing the fatal blow, even went on to graphically

Likewise, we find meritless Taylor's argument that the instructions were faulty because they did not specifically include certain elements, such as the county in which the events occurred. First, the instructions given were substantially similar to those given and approved of in *Saylor*. 144 S.W.3d at 818. Second, the instructions for Second-Degree Manslaughter began with the word "Provided, however," which, when read in context of the jury instructions in the entirety, necessarily included the aforementioned elements. Accordingly, the instructions met the "bare bones" requirement, *see Sutton v. Commonwealth*, 627 S.W.3d 836, 851 (Ky. 2021); the jury would not reasonably be confused about the instructions, and the Trial Court did not err.

## CONCLUSION

We have reviewed the jury instructions as they relate to Second-Degree Manslaughter and find none of the alleged errors Taylor complains of rises to the level of reversible error. Accordingly, as to Argument I we AFFIRM the judgment and sentence, and as to Argument II we STRIKE that argument *in toto* from Appellant's Brief.

ALL CONCUR.

---

discuss what it was like to watch the victim pass away into death. He was fully aware of his actions and his intent to terminate Roberts's life, almost obsessively. The Trial Court would not be justified in giving an instruction on an "improbable" version of the events that ignores the totality of the evidence.

-12-

ENTERED: _September 1, 2023_       _____
                                    JUDGE, COURT OF APPEALS


BRIEFS FOR APPELLANT:               BRIEF FOR APPELLEE:

Julia K. Pearson                    Daniel Cameron
Frankfort, Kentucky                 Attorney General of Kentucky

                                    Matthew R. Krygiel
                                    Assistant Attorney General
                                    Frankfort, Kentucky